WILLENBORG & Co. *v.* UNITED STATES (No. 1575).[1]

ORNAMENTS—TASSELS—CORDS AND TASSELS—TRIMMINGS—CORDS FASHIONED INTO OTHER ARTICLES.

Ornaments, known variously to the trade as "drop ornaments," "trimmings," "tassels," "cords and tassels," and "silk tassels," which are composed chiefly of silk cords and threads but partly of other materials, including soutache braid and wood or pasteboard molds, and which are fashioned by knotting the cords into designs so elaborate that they lose their continuity and identity as cords, are not dutiable under paragraph 316, tariff act of 1913, as "cords," or as "cords and tassels." They are tassels, but there being no provision in paragraph 316 for "tassels" as such, they are dutiable as ornaments or trimmings, within those provisions of paragraph 358.

United States Court of Customs Appeals, December 6, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7727 (T. D. 35418).

[Affirmed.]

*McLaughlin, Russell, Coe & Sprague* and *Sharretts, Coe & Hillis (Thaddeus S. Sharretts* and *Edward P. Sharretts* on the brief) for appellants.

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

As reaching and presented in this court this appeal proffers for decision, as to its proper dutiable classification, merchandise herein represented by samples thereof, Exhibits 1, 3, 6, 7, and 8. Claim is made in this court by counsel for appellants that similar merchandise

---

[1] Reported in T. D. 35985 (29 Treas. Dec., 735).

represented by other exhibits (9–15) is properly before the court for consideration. In the view we take of the case, however, this becomes unimportant. The merchandise represented by the aforesaid exhibits is well described by the Board of General Appraisers in its decision (record, pp. 55 and 56) in the following words:

> The articles in question are made of a number of loosely hanging silk threads which, in Exhibits 1, 6, and 7, are connected by a short piece of silk cord to a small circular ornament, which is also made in part of silk cord. The silk cord connecting the tuft of threads with the ornament is partly concealed by smaller ball-shaped ornaments, which are made from soutache braid or other material. This cord is made into a very small loop at the top of each tassel, by which the completed tassels may be attached to the article which they are intended to decorate or ornament. Exhibits 3 and 8, however, have no such loop at the top, but have a small lily-shaped ornament at the top of each tassel made from silk cord, the ornament being connected with the tuft of threads by a separate piece of cord, which is practically concealed by a small ornament made from cord or soutache braid.

There may be added to the foregoing description that the cord in each case runs entirely through the article, thereby forming the foundation upon or around which the article is constructed, and is knotted in various places to effect that purpose, thereby adjusting in appropriate and pleasing relations the crown into which the silk threads are fastened, the knotted gimps forming a part of the ornamentation and the knots in the cords themselves forming a part of the ornamentation. Exhibits 1, 6, and 7 have in addition certain molds and balls made of wood or pasteboard, which give shape to the articles. Exhibits 3 and 8, which are alike and which, as stated in the board's opinion, have lily-shaped tops, have in them but a slightly distinguishable cord. There is a cord constituting the superstructure so knotted as to become a part of the ornamental feature of the article. The lily-like structure of the top, however, is of soutache cord braided into the lily-like formation. No cord is manifest to the eye as such in Exhibits 3 and 8. The cord most manifest to the eye in the remaining exhibits is fashioned into an ornamental knot, that ornamental knot forming an important part of each article.

The merchandise was reported in answer to protest by the appraiser at the port of New York as "in fact, trimmings composed wholly or in chief value of silk and artificial silk." Approving this report of the appraiser, the collector at that port returned them for duty under the provisions of paragraph 358 of the tariff act of 1913, which, in so far as pertinent, levies duty upon "ornaments; * * * trimmings not specially provided for." The appellants claim that the goods are properly dutiable under the provisions of paragraph 316 of the act, which in part provides for "belts, beltings, * * * cords, cords and tassels, all the foregoing made of silk or of which silk or silk and india rubber are the component materials of chief

value." The board overruled the protest. Before the board and in this court counsel for the importers expressly disclaim any claim that the merchandise is either " cords " or " tassels," but asserted and assert that the imported articles fall within the description " cords and tassels."

The claim is asserted by them as to an alleged commercial understanding as to the use of that term and the scope of its common understanding. As to the commercial meaning of the terms, the board found against the appellants (record, p. 57). The board said:

However, it is contended by the importers that the articles are commercially known as " cords and tassels." Eleven witnesses were examined, and a careful consideration of their testimony leads us to the conclusion that the articles are not definitely, uniformly, and generally known in trade as " cords and tassels." On the contrary, it appears that the articles are variously known as " tassels," " cords and tassels," and " silk tassels."

It may be added that several of the witnesses, notably those of the importers and one member of the importing firm, referred to the articles as " drop ornaments " and as " trimmings."

A careful examination of the testimony in the record leads us to the statement that we find no ground upon which to disturb the finding of the board in this particular. Indeed, were the question *de novo* before this court, upon the record presented no other finding could fairly be made.

We therefore come to the inquiry whether or not such articles are within the description " cords, cords and tassels," as used in said paragraph 316.

Aid may be afforded in this inquiry by reference to other similar provisions of the tariff act of 1913. We think therefrom the intent of Congress is made plain. In several paragraphs of the law Congress legislated upon the subject matter of cords, tassels, and cords and tassels. We must assume that it did so with full knowledge of the difference in meaning in the terms. Thus in paragraph 262 of the cotton schedule provision is made for " belts, beltings, * * * cords, tassels, cords and tassels, garters, * * *." In 269 of the flax schedule provision is made for " cords." In paragraph 278 of the same schedule provision is made for " belts, beltings, bindings, cords, ribbons." Then, in order, follows paragraph 316 of the silk schedule, here in question, providing for " belts, beltings, * * * cords, cords and tassels, garters, * * * made of silk or of which silk or silk and india rubber are the component materials of chief value." Paragraph 319 of the same schedule makes provision for " beltings, cords, tassels, ribbons, * * * composed wholly or in chief value of * * * artificial or imitation silk or of artificial or imitation horsehair."

Apparently, in the construction of the tariff law Congress was frequently called upon to legislate with reference to " cords," " tassels,"

and "cords and tassels" when made of different materials. Under
no rule of construction can we say that in the use of several words
of differentiation Congress did not intend a different meaning.
The familiar rule of statutory construction against construing any
part of a law as surplusage and without meaning inhibits the court
from such a construction.

In the construction of this act, however, we have as an ultimate
source of information as to the purposes of Congress a precise
record that the distinction in meaning in these terms was by Sena-
tor Smith of Georgia, in charge of the proposed act, at the inception
of this legislation, to wit, in the framing of paragraph 262, called
to the attention of and acted upon by Congress. Thus (Congres-
sional Record, vol. 50, pt. 4, 63d Cong., 1st sess., p. 3549), when
paragraph 262 (then 267) came before the Senate for considera-
tion and it read " *   *   * beltings, *   *   * cords, garters,
*   *   *," the following colloquy occurred:

Mr. SMITH of Georgia. I have two amendments which I wish to propose to
it. After the word " belting," in the first line of the paragraph, I move to insert
" belts," and after the word " cords," at the end of the line, to insert " and
tassels."

Mr. SMOOT. I do not think it ought to read " cords and tassels." I think we
ought to insert just " tassels " and a comma, so that it will take in both,
whether it be a cord or whether it be a tassel.

Mr. SMITH of Georgia. It is " cords, tassels." We wish to add the word
" tassels."

Mr. HUGHES. Before the Senator finally accepts that, I wish to call his
attention to the possibility of the article coming as both cord and tassel.

Mr. SMOOT. If both are enumerated in the paragraph there is no question
that they would both carry the duty. They are both at the same rate. So
there would be no question about it.

Mr. SMITH of Georgia. Tassels have the same rate.

Mr. SMOOT. Tassels have a rate. There would be a conflict if each had a
different rate, but they have not.

The VICE PRESIDENT. The amendment to the amendment will be stated.

The SECRETARY. In line 21, after the word " beltings " and the comma, insert
the word " belts " and a comma, and in the same line, after the word "cords,"
insert " tassels " and a comma, so as to read: " Bandings, beltings, belts, bind-
ings, bone casings, cords, tassels, garters, tire fabric, etc."

The amendment to the amendment was agreed to.

As thus adopted the paragraph enumerated " *   *   * beltings,
belts, *   *   * cords, tassels, garters, *   *   *." As thus adopted
the paragraph covered " cords " and " tassels." There had been made,
however, a suggestion to the Senate during this colloquy that there
might be in commerce an article which could not be properly classed
as either a "cord " or as a "tassel." Subsequently, and obviously
moved by this suggestion (Congressional Record, vol. 50, pt. 5, 63d
Cong., 1st sess., p. 4138), the following colloquy and action was had:

Mr. SMOOT. I should like to refer to paragraph 267 and call the attention of
the Senator from Georgia (Mr. Smith) to that paragraph. I notice that the

statement I made on the floor of the Senate in relation to cords and tassels does not conform to what the present law is. I think there should be a comma after cords.

Mr. SMITH, of Georgia. The terms really ought to be used " cords, tassels, and cords and tassels."

Mr. SMOOT. So as to read : " Bandings, beltings, bindings, bone casings, cords, tassels, and cords and tassels."

Mr. SMITH, of Georgia. That is correct. That was the first suggestion we made, and we yielded on it; but after a reinvestigation of the subject I am satisfied that those terms ought to be used. When we returned to the cotton schedule we were going to suggest that change, but as it has been brought to the attention of the Senate now, I move for the committee that that modification be made.

The VICE PRESIDENT. It will be stated.

The SECRETARY. In paragraph 267, on page 80, line 21, after the word " tassels," insert " cords and tassels."

Mr. SMOOT. But I want to strike out the word " and " and insert a comma there.

Mr. SMITH, of Georgia. The object is to have a separate phrase of cords and tassels, as well as cords and tassels.

The SECRETARY. On page 80, line 21, after the word " tassels," in the amendment agreed to, and the comma, insert the words " cords and tassels " and a comma.

Mr. SMOOT. Then I want the word " and " stricken out.

The VICE PRESIDENT. There is none in.

Mr. SMOOT. My print shows there is, but if there is none no action need be taken.

The VICE PRESIDENT. The question is on agreeing to the amendment.

The amendment was agreed to.

On the following day after the suggestions were first made as to this language in paragraph 262 (then 267) in the Senate, the silk schedule, paragraph 316 (then 324) was before the Senate for consideration and amendment (Congressional Record, vol. 50, pt. 4, 63d Cong., 1st sess., p. 3599). It read: " * * * Cords, cords and tastels, * * * " and in this particular was adopted and enacted as thus worded. It can not be said in view of this legislative history that the attention of Congress has not been called to the different meanings of the different terms thus used. It must therefore be assumed that Congress knowingly and intentionally adopted the several phrases in the view that thereby it was legislating in each case and with each word and phrase as to a different or possibly different subject matter. In the construction of the paragraph, therefore, the court would seem to be called upon to give a different scope to each of these words and the phrase " cords and tassels."

The same conclusion is adduced from a historical review of the provision in question. These words made their first appearance in the tariff act of 1883, paragraph 427, wherein provision was made for " tassels " of gold, silver, or other metal. Their first appearance in the predecessor paragraph to paragraph 316 herein was in paragraph 412 of the tariff act of 1890, providing for " beltings, binding,

* * * cords and tassels." In paragraph 300 of the tariff act of 1894 the phrase was slightly changed, providing for "beltings, bindings, * * * cords, and tassels." In paragraph 389 of the tariff act of 1897 the provision was for "beltings, bindings, * * * cords, cords and tassels." The tariff acts of 1909 and 1913 were the same in these words as the tariff act of 1897. But little construction and adjudication seems to have been had in the pertinent parts.

Soon after the enactment of the tariff act of 1883, where the word "tassels" appeared alone in paragraph 427 of that act the Treasury Department submitted to the Department of Justice the question whether or not "certain metal fringe, cord, braid, gimp, soutache, and tresse, to be used in the trimming of military uniforms," was properly dutiable in that paragraph of that act. The Attorney General advised the Treasury Department that it was, and classification accordingly was made. The construction of those articles, as above indicated, is almost, if not precisely, the construction of these. (T. D. 6547.)

On the other hand, in June, 1893, G. A. 2181 (T. D. 14217), the Board of General Appraisers held that "fancy cords composed of silk, metal, and cotton, and not commercially known as cotton goods," were not dutiable as "cotton cords" *eo nomine* under the provisions of paragraph 354 of the tariff act of 1890. It does not appear from the report of the decision how they were assessed by the collector, whose decision was affirmed.

In G. A. 4722 (T. D. 22358), decided in July, 1900, a definition of the word "cord" as used in the tariff act was had by the Board of General Appraisers. The merchandise was described in the invoice as "silk cords," and returned for duty by the appraiser as "silk trimmings." The board describes it as consisting of "trimmings for women's dresses or other articles in serpentine or zigzag form *fashioned of silk cords and threads*, and is therefore an article composed in part of silk cord, and is not in itself 'cords' in fact or in commercial parlance, but has lost its identity as such and become a 'trimming.' Wolff *et al. v.* United States (71 Fed., 291)."

The court decision cited by the board is relevant to the point when a cord ceases to be such and passes into another tariff nomenclature. The article was soutache gilt braid, consisting of cotton cables around which was braided a gilt thread composed of metal wire and cotton thread. It was held dutiable as a manufacture in part of metal and not as a metal thread of gilt, silver, or other metals. It may be noted in passing that the threads forming the lilylike formation of these articles, many of the knots, and considerable other portions thereof in that case were of the exact construction as those under decision herein but of different material, these probably being of silk.

In G. A. 4425 (T. D. 21060) a decision of the Board of General Appraisers, subsequently affirmed by the Circuit Court for the Southern District of New York, it was held that articles of silk cord and braid, or of wool or worsted cord and braid, known variously as garnitures, hussar sets, blouses, or by other names, made in openwork conventional designs and intended for use in trimming the fronts of women's dress waists or skirts of women's dresses or costumes, are, when composed of silk, dutiable as trimmings.

This résumé of the construction placed upon the word "cords" for many years past in tariff administration and adjudication is that when a cord is so manipulated as to become an integral and essential part of another article used in the finishing and ornamenting of women's apparel, or any other similar use, it ceases to be a cord and becomes a part of another article. We think the underlying reason of those holdings sound and applicable. Cords have been used and form an integral part of these importations, but they have been so manipulated that they have ceased to be cords in the common acceptation of that term and have become parts of other finished articles of trade and commerce. How can it, therefore, be said that an article is within the description of cords and tassels when no part thereof, as imported, responds to the definition of a cord?

It is pertinent to remark in passing that the testimony in this record shows that there is no silk tassel, or ornament, or trimming of this kind known to trade and commerce which is not made in part of cords. If this be true, as we must assume it is, there would be no such thing known to trade and commerce as a silk tassel, but all articles responding to that call would be known as cords and tassels.

Illustrative exhibits have been offered in the case of what constitutes "cords and tassels." They are articles approximately a yard in length with a tassel on each end, the major portion thereof plainly being a silk cord. They are articles of utility as well as adornment and are used on or attached to wearing apparel for various purposes. While these may respond to some other tariff nomenclature such as belts and beltings, they are, nevertheless, plainly within the terms cords and tassels. Finally it may be said that these articles are precisely within the definition of the word "tassels" as found in the various dictionaries. They are as follows:

Webster's New International Dictionary (1910):

*Tassel.*—1. A pendent ornament, ending in a tuft of loose threads or cords, attached to the corners of cushions, to curtains, and the like.

Standard Dictionary, Twentieth Century Edition (1909):

*Tassel.*—1. A pendent ornament, for curtains, cushions, and the like, consisting of a tuft of loosely hanging threads or cords, as of silk or wool, often headed with a silk-covered button or mold.

Worcester's Dictionary (1908):

*Tassel.*—1. A pendent ornament, generally consisting of a knob from which hangs a bunch of fringe.

Century Dictionary and Cyclopedia (1911):

*Tassel.*—1. A pendent ornament, consisting generally of a roundish mold covered with twisted threads of silk, wool, etc., which hang down in a thick fringe. The mold is sometimes omitted. The loose tuft terminating it may be of the finest raveled silk, or of stout twists of gold or silver wire. Tassels are frequently attached to the corners of cushions, to curtains, walking-canes, umbrella handles, sword hilts, etc., but are gradually passing out of use.

There is, however, no provision in paragraph 316 for " tassels " as such. That they are ornaments is admitted. That they are trimmings is not disputed. Accordingly, they fall for dutiable purposes within those provisions of paragraph 358.

The decision of the Board of General Appraisers is *affirmed.*