**LOWA, LTD., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 82-1-00067.**

United States Court of International Trade.

March 16, 1983.

Barnes, Richardson & Colburn, New York City (Andrew P. Vance, Leonard Lehman and John J. Galvin, New York City, on brief, Andrew P. Vance, New York City, at oral argument) and Cole & Corrette, Washington, D.C. (John E. Corrette, III, Theodore Sonde and Steven H. Levin, Washington, D.C., of counsel), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, New York City, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch (Madeline B. Kuflik, New York City, on brief and at oral argument), for defendant.

*On Defendant's Motion to Dismiss*

RE, Chief Judge:

In this action, plaintiff seeks an order directing the Customs Service to accept plaintiff's proffered entry papers for an aircraft under item 694.41 of the Tariff Schedules of the United States (TSUS) which provides for entry free of duty.[1] Customs rejected the entry, and informed plaintiff that the aircraft should be entered under item 694.40 which provides for the payment of a 5% ad valorem duty.[2]

The defendant has moved to dismiss the action for lack of jurisdiction contending that the court is without jurisdiction because: (a) plaintiff has failed to exhaust its administrative remedies; (b) plaintiff has failed to state a claim upon which relief may be granted; (c) the action is premature; and (d) the United States has not consented to be sued under the circumstances presented in this case.

Since plaintiff has failed to pursue or exhaust its administrative remedies as prescribed by the pertinent jurisdictional statutory provision, this action must be dismissed.

The facts which give rise to this litigation are not in dispute.

On August 7, 1979, a Boeing 707 aircraft of American registry arrived at Honolulu from New Zealand. While the plane was abroad its interior had been extensively refurbished, and, on August 9, 1979, plaintiff, the owner of the aircraft, sought to file a consumption entry under item 694.40, TSUS. Item 694.40 would impose a 5% ad valorem duty on the value added to the aircraft by the refurbishing. Customs officials, believing that the aircraft had been of American registry at the time the repairs were made, a belief confirmed by plaintiff, refused to release the aircraft until a vessel repair entry was filed pursuant to 19 U.S.C. § 1466. Section 1466 imposes a 50% duty on the expense of repairs made in a foreign country to a vessel documented under the laws of the United States. *See Suwannee Steamship Co. v. United States*, 79 Cust.Ct. 19, C.D. 4708, 435 F.Supp. 389 (1977).

---

1. TSUS (1981)

Schedule 6, Part 6, Subpart C

Aircraft and spacecraft, and parts thereof:
 Civil aircraft; spacecraft; and parts of each of the foregoing:

\* \* \* \*

694.41 Airplanes . . . . . . . . . . . . . . . . Free

2. TSUS (1978)

Schedule 6, Part 6, Subpart C

Aircraft and spacecraft, and parts thereof:

\* \* \* \*

694.40 Airplanes . . . . . . . . . . . . . . . . 5% ad val.

On August 10, 1979, plaintiff secured the release of its aircraft by filing a vessel repair entry and posting a $750,000 bond to cover the estimated vessel repair duties. The plane continued its planned flight across the United States, and since August 10, 1979, plaintiff has enjoyed the uninterrupted use of its aircraft.

On November 5, 1979, plaintiff filed with the district director of Customs a petition seeking relief from the 50% vessel repair duty. Plaintiff claimed that its aircraft was not subject to the duty because it was used solely for corporate and personal purposes, and it was neither licensed to operate, nor did it in fact operate in trade or commerce. In considering this petition, Customs elicited from plaintiff information which established that the aircraft was not documented under the laws of the United States at the time the repairs were made. Because of this newly acquired information, Customs concluded that plaintiff's aircraft was not subject to vessel repair duties, and, on September 17, 1980, notified plaintiff of its decision.

On February 5, 1981, Customs advised plaintiff that it would be required to file an entry summary for its aircraft. By letter dated April 7, 1981, plaintiff requested that the vessel repair entry be liquidated free of duty so that the attendant bond could be terminated. Customs declined, indicating that liquidation was an inappropriate procedure for terminating the bond. Instead, Customs recommended that plaintiff substitute a new entry for the vessel repair entry. This procedure, according to Customs, would allow the cancellation of the vessel repair entry and the invalidation of the bond. Customs also stated that the vessel repair entry and bond would not be canceled until an entry summary with duty was filed.

On May 7, 1981, plaintiff filed with the Customs Service an entry summary entering the aircraft free of duty under item 694.41, TSUS. On January 1, 1980, pursuant to Presidential Proclamation 4707, 3 C.F.R. 87, 139 (1980), item 694.41 superseded item 694.40, TSUS, which contained the 5% duty provision under which plaintiff first sought to enter the aircraft. In rejecting plaintiff's entry, Customs notified plaintiff that the entry should be made under item 694.40, the provision applicable to aircraft during 1979 when plaintiff's airplane had been released into the commerce of the United States.

When informal attempts to reach an agreement failed, plaintiff filed, on July 16, 1981, a protest objecting to the refusal by Customs to accept the entry under item 694.41. Customs responded to plaintiff's protest with a letter which stated that the protest was premature since the rejection of entry papers was not a protestable decision. Plaintiff chose to construe the explanation offered by Customs as a denial of its protest, and, on January 15, 1982 commenced this civil action.

The question presented by defendant's motion to dismiss is whether this court has jurisdiction to review, after imported merchandise has been released into the commerce of the United States, but before liquidation or the payment of estimated duties, a decision by Customs which classifies imported merchandise for the purpose of determining estimated duties. For the reasons which follow, the court holds that it does not have jurisdiction of this action.

It is not questioned that when a jurisdictional issue is raised, "the burden rests on plaintiff to prove that jurisdiction exists." *United States v. Biehl & Co.*, 3 CIT 158, 160, 539 F.Supp. 1218 (1982). In this case, plaintiff asserts that the court has jurisdiction of this action under 28 U.S.C. § 1581, subsections (a), (h) and (i). Section 1581 provides in pertinent part:

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

\* \* \* \* \* \*

(h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to

the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

\* \* \* \* \* \*

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

\* \* \* \* \* \*

*Jurisdiction Under 28 U.S.C. § 1581(a)*

28 U.S.C. § 1581(a) grants the Court of International Trade exclusive jurisdiction of any civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515 (Supp. IV 1980). In turn, 19 U.S.C. § 1515 provides for the allowance or denial of protests filed pursuant to section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (Supp. IV 1980).

This statutory scheme indicates that the court has jurisdiction of this action under 28 U.S.C. § 1581(a) only if the rejection of plaintiff's substitute entry documents was a protestable decision under 19 U.S.C. § 1514. Plaintiff claims that the rejection of its entry documents was protestable under section 1514(a)(4) which allows importers to protest decisions by customs officers as to:

> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

Plaintiff alleges that its aircraft was excluded from entry by the district director's rejection of the substitute entry documents on May 7, 1981. It asserts that the rejection of the substitute entry documents is an "exclusion of merchandise from entry," within the meaning of 19 U.S.C. § 1514(a)(4). Defendant emphasizes that in this case no merchandise has been excluded since the aircraft has already been released into the commerce of the United States. Plaintiff, however, responds that the statute allows importers to protest exclusions from entry *or* delivery. In plaintiff's view, although the aircraft has not been excluded from delivery, it has nevertheless been excluded from entry.

The authorities which plaintiff submits in support of its interpretation of the statutory provisions do not resolve the question presented. In *Central Commodities Corp. v. United States*, 6 Cust.Ct. 452, C.D. 514 (1941), the court took jurisdiction of an action contesting the rejection of an entry because the importer did not tender, in addition to the regular duties, an amount to cover the countervailing duties which Customs claimed were due. In rendering its opinion, however, the court did not indicate whether the imported merchandise had been released from Customs custody prior to the filing of the protest. In *Alberta Gas Chemicals, Inc. v. United States*, 84 Cust.Ct. 217, C.R.D. 80–1, 483 F.Supp. 303 (1980), the court took jurisdiction of an action contest-

ing Customs rejection of an entry because the importer refused to file an antidumping bond. In *Alberta Gas,* the court clearly indicated that the imported merchandise had been excluded from both entry *and* delivery. Thus, in neither *Central Commodities* nor *Alberta Gas* was the court called upon to find an exclusion of merchandise based on a distinction between entry and delivery.

In *A.N. Deringer, Inc. v. United States,* 37 Cust.Ct. 166, C.D. 1818 (1956), the imported merchandise was released before Customs refused the importer's oral request to enter the goods free of duty under a temporary importation bond. However, the importer did not commence an action in the United States Customs Court until it had filed an entry as directed by the customs officer, the entry was liquidated, and all liquidated duties were paid. In holding that the action was timely filed, the court uttered the dictum that the importer might have pursued an action based on exclusion but that this possibility would not preclude a cause of action based on the denial of a protest filed after liquidation and the payment of duties. Since the court's jurisdiction over an action based on exclusion was not in issue, the court did not analyze that question, nor did it consider the distinction between entry and delivery upon which plaintiff relies in this case.

At oral argument, plaintiff observed that the term "entry," in customs usage, is a term of art. The customs regulations define entry as "that documentation required * * * to be filed with the appropriate Customs officer to *secure the release* of imported merchandise from Customs custody, or the act of filing that documentation." 19 C.F.R. § 141.0a(a) (1982). (Emphasis added.) Entry occurs when "the appropriate Customs officer *authorizes the release* of the merchandise * * *." 19 C.F.R. § 141.68(a)(1) (1982). (Emphasis added.) These regulations indicate that, contrary to plaintiff's assertion, the term "entry," in customs practice, is very closely bound to the act of releasing merchandise into the commerce of the United States.

While there may be instances when the delivery of merchandise and its entry occur independently, as when the importer enjoys an immediate delivery privilege, entry and delivery did not occur independently in the present case. In this case delivery of the merchandise was permitted only when plaintiff did in fact file an entry, i.e., a vessel repair entry. The vessel repair entry, though based upon an erroneous factual assumption, was not a nullity. It was effective to secure the release of plaintiff's merchandise into the commerce of the United States, and thus resulted in an entry of merchandise, within the meaning of 19 U.S.C. § 1514(a)(4). Without redelivery of the goods, the correction, amendment or substitution of entry documents cannot alter the operative fact that plaintiff's *merchandise* was entered on August 10, 1979 when plaintiff filed a vessel repair entry and bond, and thereby secured the *release* of its aircraft.

 In view of the applicable statutory provisions and pertinent regulations, the court holds that the rejection of substitute entry documents, submitted after the merchandise has been released into the commerce of the United States, does not constitute an exclusion of merchandise from entry. Since the rejection of plaintiff's substitute entry documents was not protestable under 19 U.S.C. § 1514(a)(4), the protest filed by plaintiff prior to liquidation was premature and may not serve as a basis for invoking this court's jurisdiction under 28 U.S.C. § 1581(a). *Dart Export Corp. v. United States,* 43 CCPA 64, C.A.D. 610 (1956), *cert. denied,* 342 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956).

*Jurisdiction Under 28 U.S.C. § 1581(h)*

Plaintiff's contention that the court has jurisdiction of this action pursuant to 28 U.S.C. § 1581(h) is plainly without merit. Section 1581(h) grants the Court of International Trade jurisdiction to review preimportation rulings issued by Customs if the party commencing the action can demonstrate that it would suffer irreparable harm if review were to be denied.

Plaintiff readily acknowledges that this action does not involve a preimportation ruling issued by Customs. Neither has plaintiff attempted to make the necessary showing of irreparable injury or harm to invoke the court's jurisdiction under section 1581(h). Accordingly, the court holds that it does not have jurisdiction of this action under 28 U.S.C. § 1581(h).

### Jurisdiction Under 28 U.S.C. § 1581(i)

Finally, plaintiff contends that the Court of International Trade has jurisdiction of this action under 28 U.S.C. § 1581(i)(4). That provision, which in broad language grants the court residual jurisdiction of any civil action arising out of the enforcement or administration of the customs laws, has been the subject of considerable judicial scrutiny since its enactment in 1980. With each decision, its features have become more distinct.

Section 1581(i) was enacted to "eliminate the confusion" which formerly existed "as to the demarcation between the jurisdiction of the district courts and the Court of International Trade." The provision was included "to eliminate much of the difficulty experienced by international trade litigants who in the past commenced suits in the district courts only to have those suits dismissed for want of subject matter jurisdiction. The grant of jurisdiction in subsection (i) will ensure that these suits will be heard on their merits." H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 47, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3729, 3758–3759. Although it was not intended "to create any new causes of action not founded on other provisions of law," it was intended "to confer subject matter jurisdiction upon the court * * *." *Id.* at 3759. *See also Carlingswitch, Inc. v. United States,* 5 CIT ——, 560 F.Supp. 46 (1983).

As this court observed in *American Air Parcel Forwarding Co. v. United States,* 1 CIT 293, 515 F.Supp. 47 (1981), section 1581(i) was designed to serve as a "broad 'residual grant of jurisdictional authority'" and was apparently drawn from 28 U.S.C.

§ 1331, the federal question jurisdictional provision with respect to United States district courts. "Section 1581(i) may be said to accomplish, as to the Court of International Trade, the purpose served by § 1331 for the district courts." 1 CIT at 295–296, 515 F.Supp. at 50–51.

This relationship between the scope and dimension of this court's subject matter jurisdiction under section 1581(i), and the pre-1980 subject matter jurisdiction of United States district courts was perceived and applied in two instructive opinions, *United States v. Uniroyal,* 69 CCPA ——, 687 F.2d 467 (1982), and *United States Cane Sugar Refiners' Association v. Block,* 69 CCPA ——, 683 F.2d 399 (1982).

In *Uniroyal,* the court, after examining the pertinent legislative history, concluded that: "The jurisdiction of the Court of International Trade under § 1581(i) is expressly 'in addition to the jurisdiction conferred * * * by subsections (a)–(h),' and the legislative history of § 1581 further evidences Congress' intention that subsection (i) not be used *generally* to bypass administrative review by meaningful protest." (Emphasis added.) 687 F.2d at 472. As noted in the majority opinion, at footnote 15, this construction of subsection (i) is consistent with pre-1980 precedent from the district courts.

Similarly, Chief Judge Markey, in *United States Cane Sugar Refiners' Association,* referred to the pre-1980 subject matter jurisdiction of the district courts in construing the intended scope of section 1581(i), and held that this court had jurisdiction of the action in that case under section 1581(i):

> * * * Respecting jurisdiction under § 1581(i), we note the provision of injunctive powers to the Court of International Trade in the Customs Courts Act of 1980 and the special circumstances of this case which, absent that provision, would have required Association to present its case to the District Court. We are persuaded that in this case, involving the potential for immediate injury and irreparable harm to an industry and a substantial impact on the national economy, *the de-*

*lay inherent in proceeding under § 1581(a) makes relief under that provision manifestly inadequate and, accordingly, the court has jurisdiction in this case under § 1581(i).* (Emphasis added.) 683 F.2d 399, 402, Note 5.

It is apparent, therefore, that this court has subject matter jurisdiction under section 1581(i) of a cause of action, which otherwise would be within section 1581(a), only when the relief available under section 1581(a) is manifestly inadequate or when necessary, because of special circumstances, to avoid extraordinary and unjustified delays caused by the exhaustion of administrative remedies.

Recognizing the jurisdictional limitations of section 1581(i), plaintiff does not claim that its cause of action arises under that provision. Rather, it asserts that it has been aggrieved by the district director's administration of sections 315 and 505 of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1315, 1505 (Supp. IV 1980). In pertinent part, section 1315 states that the rate of duty applicable to imported merchandise shall be the rate of duty in effect at the time when the documents comprising the entry, together with the estimated duties, have been deposited with the appropriate customs officer. Articles for which duty may be paid at a time later than the time of making entry are subject to the rate in effect at the time of entry. Section 1505 provides that unless merchandise is entered for warehouse or transportation, or under bond, the importer must deposit at the time of entry the amount of duties estimated by Customs to be payable on the merchandise.

Plaintiff's substantive claim is that Customs has misapplied these provisions by asking plaintiff to deposit estimated duties calculated in accordance with the rate of duty applicable in 1979 when its plane was released into the commerce of the United States. Plaintiff argues that as a result of a mistake in the original entry filed in 1979 its entry documents were not filed until 1981. Hence, it should enjoy the benefit of the change in the tariff schedules which

took effect in 1980. This change eliminated the 5% ad valorem duty which was applicable to imported aircraft during 1979 when plaintiff's aircraft entered the United States.

Plaintiff contends that it has exhausted its administrative remedies by protesting the rejection of the substitute entry documents which it submitted to Customs in 1981. Alternatively, it urges that it is inappropriate to require the exhaustion of administrative remedies in this case "in view of the delays engendered by the unlawful, arbitrary, and capricious actions of the District Director; the financial loss suffered by plaintiff; and the narrow strictly legal question involved."

Defendant, on the other hand, maintains that plaintiff seeks a declaratory judgment designating the classification and rate of duty applicable to imported merchandise. Defendant points out that importers may contest the classification and rate of duty applicable to imported merchandise by a protest filed after liquidation. The defendant emphasizes that the court may take jurisdiction of this kind of an action only when a protest filed after liquidation has been denied and all liquidated duties have been paid.

Notwithstanding the useful and beneficial purposes of section 1581(i), the court has concluded that its invocation in the case at bar would frustrate the orderly administration of the customs laws by permitting plaintiff to circumvent the usual and normal administrative review process. It is both necessary and appropriate that plaintiff be required to pursue the administrative review process prescribed by Congress before seeking relief in this court.

Whether the question to be decided is factual or "strictly legal," the judicial respect due the administrative process requires that the decision should be made in the first instance by the administrative agency to whom Congress has delegated the responsibility of administering the statutory plan. *See* Justice Frankfurter in *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134,

141, 60 S.Ct. 437, 440, 84 L.Ed. 656 (1940) ("the due observance by courts of the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution"), and dissent in *CBS v. United States,* 316 U.S. 407, 441, 62 S.Ct. 1194, 1211, 86 L.Ed. 1563 (1941) ("due regard for the proper distribution made by Congress of legal authority as between two law-enforcing agencies of government, the administrative and the judicial").

In this action the plaintiff is asking the court to review, prior to liquidation or the payment of estimated duties, a decision by Customs classifying imported merchandise for the purpose of determining estimated duties. This complaint falls squarely within the class of cases described in 19 U.S.C. § 1514, which provides that decisions involving the "classification and rate and amount of duties chargeable" are subject to administrative review by way of protest filed within ninety days after, but not before, notice of liquidation. Customs decisions as to the classification and rate of duty on imported merchandise are clearly subject to judicial review under 28 U.S.C. § 1581(a). A civil action contesting those decisions, however, may be commenced only after an administrative protest has been denied and all liquidated duties have been paid. 28 U.S.C. § 2637.

The existence of a specific statutory scheme, which provides for administrative and judicial review of determinations of classification and rate of duty, precludes the court from assuming jurisdiction of this action under any other provision, including section 1581(i).

It must be noted that this case does not involve an extraordinary hardship or unusual injury which would render the exhaustion of administrative remedies lacking in due process or otherwise inappropriate. Plaintiff has not demonstrated that the review procedure established by Congress to contest the classification and rate of duty of imported merchandise is manifestly inadequate or will cause irreparable injury. See concurring opinion in *United States v. Uniroyal, Inc., supra,* 687 F.2d at 475. Moreover, since plaintiff did not provide Customs with accurate information when the aircraft arrived in Honolulu in 1979 and the vessel repair entry was filed, it is not without blame for the delays caused by the mistake as to the plane's registry.

■ Finally, it is appropriate to conclude by recalling the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). In this case, plaintiff has shown no statutory or judicial authority, extraordinary hardship, or irreparable injury which would justify a departure from this long settled rule of judicial administration.

Since plaintiff has neither pursued nor exhausted its administrative remedies in the manner prescribed by Congress, the court lacks jurisdiction, and this action is dismissed.

It is so ordered.

ORDERED, ADJUDGED, and DECREED, that this action be and hereby is dismissed.