**MANUFACTURE DE MACHINES DU HAUT–RHIN, Plaintiff,**

v.

**William VON RAAB, Commissioner of Customs, United States Customs Service and International Armament Corp., Defendants.**

**Court No. 83–2–00286.**

United States Court of International Trade.

July 25, 1983.

Klein & Vibber, New York City (Arthur O. Klein, and Thomas Abbott Gallagher, New York City, on the motion), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade, Commercial Litigation Branch, New York City (Michael P. Maxwell, New York City, on the motion), for federal defendants.

Crowell & Moring, Washington, D.C. (Peter B. Work, Washington, D.C., on the motion), for defendants.

## MEMORANDUM

CARMAN, Judge:

This matter is before me on plaintiff's motion for a preliminary injunction and federal defendants' cross-motion to dismiss. Defendant, International Armament Corporation ("Interarms") has responded to both motions.

The issues presented by these motions include whether this court has jurisdiction either pursuant to 28 U.S.C. § 1581(h), 28 U.S.C. § 1581(i) or 28 U.S.C. § 1585 (Supp. IV 1980) and if jurisdiction does exist whether or not the elements necessary for a preliminary injunction are present.

This action contests a ruling by the United States Customs Service ("Customs"), excluding from the United States, pistols manufactured by plaintiff, Manufacture de Machines du Haut-Rhin ("Manurhin"), which held the imprint of the words "LIC. EXCL. WALTHER" and "LIC. WALTHER PP" infringed upon Walther trademarks owned by defendant Interarms.

Carl Walther, Gmbh ("Carl Walther"), a German manufacturing firm, registered in 1925 its "WALTHER IN DESIGN" trademark in Germany. In the early 1930's, it became the registered owner of the United States trademark "WALTHER IN DESIGN". Pistols manufactured by Carl Walther bearing the trademark gained a reputation for high quality, reliability and performance.

Carl Walther lost its production facilities after World War II and was unable to continue manufacturing pistols. As a result of this loss of production capability, Carl Walther licensed Manurhin to manufacture "WALTHER PP and PPK" pistols according to Walther specifications. Manurhin has continued to manufacture the pistols without interruption pursuant to similar license renewal agreements. The most

recent license renewal was in 1982 for a term of five years.

Interarms has for twenty years been an importer of Walther firearms. Although the facts are not entirely clear, it seems Interarms obtained, in 1969, a representative agreement from Carl Walther to distribute Walther firearms in the United States. In 1977, Interarms apparently secured from Carl Walther a license for 15 years with an automatic extension of 10 years for the exclusive right to manufacture and distribute "PP, PPK and PPK/S" type Walther pistols in North America. The license agreement purportedly granted Interarms the exclusive right to import and distribute all other Walther firearm products in the United States.

Carl Walther assigned in 1981 its trademark "WALTHER IN DESIGN" Reg. No. 303,701, to Interarms. The trademark was recorded with Customs for import protection effective November 2, 1981.

The Customs Service, acting in February, 1982 pursuant to section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526 (1976 & Supp. III 1979)[1], detained two small shipments of pistols marked "LIC. EXCL. WALTHER." These pistols were manufactured by Manurhin. Manurhin was not the importer. The pistols were imported by two companies, EJK Devco, Inc., and Heckler and Koch.

Customs decided in June, 1982, that the terms "LIC WALTHER PP" and "LIC. EXCL. WALTHER" had no trademark significance and appeared on the pistols in question merely to indicate that the patent holder had licensed Manurhin to manufacture and sell pistols under their patent rights. The Customs decision expressed the opinion that the name "WALTHER" was a trade name usage rather than a trademark, and noted the presence of the Manurhin (water wheel) trademark in a prominent location on the pistols.

Carl Walther assigned to Interarms the U.S. trademark "Walther", Reg. No. 1,120,-867, which was then duly recorded on July 14, 1982, with Customs for import protection.

Interarms asked Customs to reconsider its June, 1982 decision which found the terms "LIC. Walther PP" and "LIC. EXCL. WALTHER" had no trademark significance. Customs upon reconsideration found, on January 20, 1983, that since Interarms was the owner in the United States of the trademark "WALTHER" and had recorded both the "WALTHER" and "WALTHER IN DESIGN" trademarks with Customs for import protection, that pistols bearing the words "LIC. EXCL. WALTHER" and "LIC. WALTHER PP" should be prohibited from entry into the United States. The reconsideration decision observed that the manner and number of times the term "WALTHER" was used on the pistols was evidence that the term was being employed in a trademark sense to associate the pistols with Walther and not merely in a descriptive sense to indicate the pistols were manufactured under a license granted by Walther to Manurhin.

Manurhin filed an action in November, 1982, in the United States District Court for the Eastern District of Virginia, challenging Interarms' trademark rights in the name "WALTHER". The action was dismissed without prejudice[2].

---

1. Section 526 provides:
   * * * it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States, under the provisions of sections 81 to 109 of title 15, and if a copy of the certificate of registration of such trademark is filed with the Secretary of the Treasury, in the manner provided in section 106 of said title 15, unless written consent of the owner of such trademark is produced at the time of making entry.

2. Plaintiff sought a declaratory judgment as well as an injunction preventing defendant Interarms from petitioning the Customs Service to bar the import of pistols manufactured by plaintiff bearing the "WALTHER" mark. The action was dismissed without prejudice in the United States District Court.

Manurhin filed this action demanding declaratory judgment relief. Manurhin requested this court find that defendant Interarms could not register the trademark "WALTHER" and "WALTHER IN DESIGN" because the assignment from Carl Walther (not a party in this action) to Interarms did not transfer ownership in the marks to Interarms. Defendant Interarms filed an answer and a counterclaim. The counterclaim requested this court to enjoin Manurhin from dealing in merchandise bearing the same mark or any mark confusingly similar to either of the Walther trademarks. Manurhin moved subsequently for a preliminary injunction. The federal defendants cross-moved to dismiss. Interarms responded to both motions.

## JURISDICTION

Although a variety of issues have been presented, the threshold question, raised by federal defendants' motion to dismiss, is whether or not this court has jurisdiction to review the ruling of Customs.

■ When a jurisdictional issue is raised, the burden rests on the plaintiff to prove that jurisdiction exists. *United States v. Biehl & Co.*, 3 CIT 158, 160, 539 F.Supp. 1218, 1220 (1982).

■ Plaintiff argues that the court has jurisdiction pursuant to 28 U.S.C. § 1581(h) and (i), and 28 U.S.C. § 1585 (Supp. IV 1980). Defendants contend that none of the above sections confer jurisdiction upon the court and judicial review should be entertained pursuant to section 1581(a), after plaintiff has exhausted its administrative remedies. It is with this general argument of the defendants that the court agrees. A

discussion of each assertion of jurisdiction follows.

### 28 U.S.C. § 1581(h)

Plaintiff contends that it should not be required to exhaust its administrative remedies in the traditional sense by completing an import transaction, filing a protest and contesting the denial of the protest. Plaintiff asserts, although not alleged in the complaint, that the court has jurisdiction pursuant to section 1581(h) and the traditional method of obtaining judicial review should be circumvented because it will suffer irreparable harm if further delay is encountered. Subsection (h) of section 1581 provides:

> * * * The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

It is clear that section 1581(h) grants this court jurisdiction to review pre-importation rulings under limited circumstances where an importer may suffer irreparable harm if he is unable to obtain judicial review of a ruling until a contemplated transaction is completed, the duties are paid and a suit is commenced.[3] In the case at hand, the de-

3. H.R. Report No. 1235, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3729, 3758 stated as follows:

Subsection (h) of proposed section 1581 is also a new grant of subject matter jurisdiction to the Court of International Trade. It provides that the court may review "prior to the importation of the goods involved," a ruling or a refusal to issue or change a ruling by the Secretary of the Treasury regarding such issues as the classification, valuation, or rate of duty of those goods. At present, judicial review of a ruling can be obtained only by completing an

import transaction in accordance with the ruling and then proceeding to obtain judicial review in the usual manner, that is filing a protest, paying the duties and contesting the denial of the protest.

The Committee recognizes that in certain instances a person can be injured if he is unable to obtain judicial review of a ruling by the Secretary of the Treasury unless and until the contemplated transaction is completed, the duties are paid and a suit is commenced in the Customs Court. Thus, it may be appropriate in

termination made by Customs was not a pre-importation ruling, since the goods in question were detained when there was an attempt to import them. Furthermore, plaintiff has not demonstrated that it would suffer irreparable harm as contemplated by section 1581(h).

■ The irreparable harm contemplated by section 1581(h) is the harm that may be visited upon an importer by requiring the importation of merchandise and requiring the importer to go through the administrative process of protesting its exclusion. The harm argued by Manurhin is harm resulting from the exclusion of merchandise—lost profits, lost opportunities to make agreements for sale of its product, lost goodwill, and tarnished good name. See affidavit of Daniel Chovet[4].

In addition to the court finding Mr. Chovet's arguments highly speculative, the harm addressed was not that of importing merchandise and going through the administrative process, but rather the possible harm of the exclusion. To permit the plaintiff to use section 1581(h) as requested, would circumvent the system of review Congress created and use section 1581(h) in a way that was not intended by Congress. Section 1581(h) is generally to be applied on occasions where an importer can show that it should be granted an anticipatory ruling from Customs in order to avoid incurring irreparable harm in connection with the commencement of an import transaction. Plaintiff in this case has not attempted to import nor has it made a showing that such an import would present any special or particularly difficult problems.

As the federal defendants point out, the legislative history further reveals the limited application of section 1581(h), see footnote 3. Furthermore, since the legislative history concerning the meaning of the word "irreparable" appears silent, it is useful to examine its plain meaning in broad equitable terms. Irreparable injury has been defined as follows:

> * * * This phrase does not mean such an injury as is beyond the possibility of repair, or beyond possible compensation in damages, or necessarily great damage, but includes an injury, whether great or small, which ought not to be submitted to, on the one hand, or inflicted, on the other, and which, because it is so large or so small, or is of such constant and frequent occurrence, or because no certain pecuniary standard exists for the measurement of damages, cannot receive reasonable redress in a court of law. Wrongs of a repeated and continuing character, or which occasion damages

limited circumstances to permit judicial review prior to the completion of the transaction or payment of the duties. Many of the witnesses who testified before the Subcommittee agreed, including the Departments of Justice and the Treasury.

The time-honored rule is that the court does not possess jurisdiction to review a ruling or a refusal to issue or change a ruling by the Secretary of the Treasury unless it relates to a subject matter presently within the jurisdiction of the United States Customs Court, for example, an action brought pursuant to section 515 of the Tariff Act of 1930. The Committee intends a very narrow and limited exception to that rule. The word "ruling" is defined to apply to a determination by the Secretary of the Treasury as to the manner in which it will treat the contemplated transaction. In determining the scope of the definition of a "ruling," the Committee does not intend to include "internal advise" or a request for "further review", both of which relate to completed import transactions.

4. The affidavit of Mr. Chovet sets forth some general background and the good reputation of Manurhin as a manufacturer. Mr. Chovet stated that American companies have expressed an interest to sell WALTHER pistols manufactured by Manurhin in the United States; however, these negotiations were not followed through because of the agreement with Interarms. Mr. Chovet asserted that because of the January 1983 Customs Service ruling, Manurhin cannot conclude any possible commercial contracts with American firms. However, Mr. Chovet did not name any American companies or state that the actual completion of any contracts were pending.

Mr. Chovet further stated that "since American companies can no longer buy the United States WALTHER pistols marked 'MANURHIN LIC. EXCL. WALTHER' or 'MANURHIN LICENSE WALTHER,'" these companies, and in particular their American purchasing agents, may think that MANURHIN is, or has, become an infringer, a pseudo-manufacturer or a bad manufacturer of WALTHER pistols.

that are estimated only by conjecture, and not by any accurate standard, are included.

Black's Law Dictionary 706–707 (5th ed. 1979.)

It is clear that it was not the intent of Congress to allow review prior to an import without the showing of exceptional circumstances required by section 1581(h). Absent these exceptional circumstances, the traditional methods of obtaining judicial review must be employed. There has been no showing that Manurhin does not have the ability to import a test shipment of pistols and file a protest against any adverse decision by Customs. The irreparable injury alleged by Manurhin is not the type of injury which section 1581(h) was intended to avoid [5].

## II

### 28 U.S.C. § 1581(i)

It is further asserted by the plaintiff that section 1581(i) provides this court with jurisdiction. Subsection (i) of section 1581 reads as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than protection of the public health or safety; or
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

With respect to the claimed jurisdiction under 28 U.S.C. § 1581(i) (Supp. IV 1980), it must be first noted that section 1581(i) cannot be used to circumvent the procedures set forth by section 1581(a). See *United States v. Uniroyal,* 69 CCPA ——, 687 F.2d 467 (1982). In *Uniroyal,* the court specifically stated that "The jurisdiction of the Court of International Trade under § 1581(i) is expressly 'in addition to the jurisdiction conferred * * * by subsections (a)–(h),' and that the legislative history of § 1581 further evidences Congress' intention that subsection (i) not be used generally to bypass administrative review by meaningful protest." 687 F.2d at 472.

The administrative procedure applicable in the case at hand is triggered by a Customs exclusion of an importer's merchandise at point of entry. At that point, the importer can protest the exclusion.[6] If Customs denies the protest, judicial review may occur pursuant to 28 U.S.C. § 1581(a) (Supp. IV 1980).[7]

Plaintiff has never attempted to import merchandise and consequently has never had any merchandise excluded. There has been no showing that plaintiff cannot import a small shipment of the pistols in question, file a protest upon exclusion, and exhaust its administrative remedies.

This court has subject matter jurisdiction under section 1581(i) of a cause of action, which might otherwise be available under

---

**5.** It is noted here that plaintiff's assertion of jurisdiction under section 1581(h) is inconsistent with its request for a preliminary injunction since subsection (h) only provides for declaratory relief.

**6.** Section 1514(a)(4) of Title 19 provides that a protest may be filed with respect to, "The exclusion of merchandise from entry or delivery under any provision of the customs laws."

**7.** Section 1581(a) of Title 28 provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."

section 1581(a), only when the relief available under section 1581(a) is manifestly inadequate or necessary because of special circumstances to avoid extraordinary and unjustified delays caused by the exhaustion of administrative remedies. *Lowa Ltd. v. United States,* 5 CIT ——, 561 F.Supp. 441 (1983). *United States Cane Sugar Refiners' Association* 69 CCPA ——, 683 F.2d 399 (1982). There has been no indication in this case that section 1581(a) is inadequate or special circumstances demand assumption of jurisdiction under section 1581(i).

### III

#### *28 U.S.C. § 1585*

Plaintiff lastly asserts jurisdiction under section 1585 which reads as follows:

> The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States.

■ This assertion of jurisdiction by plaintiff is simply without merit. Section 1585 does not grant jurisdiction to the Court of International Trade, but rather confers the ability to grant injunctive relief to the court. *Kidco, Inc., v. United States,* 4 CIT ——, Slip Op. 82–71 (Sept. 8, 1972).

Section 1585 fulfills the intent of Congress to give the Court of International Trade the same equitable powers as a federal district court. The legislative history of section 1585 reveals the following:

> Proposed section 1585 provides that the Court of International Trade shall possess all the powers in law and equity of, or conferred by statute upon a district court. In the past, there has been some doubt as to whether or not the Customs Court possessed this full judicial authority. It is the Committee's intent to make clear that the Customs Courts successor, the United States Court of International Trade, does possess the same plenary powers as a federal district court.

H.R.Rep. No. 1235, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Ad. News 3762.

Therefore, since section 1585 is not a jurisdictional grant but rather a grant of equitable powers, plaintiff's assertion of jurisdiction under section 1585 is inappropriate.

### CONCLUSION

For the above-mentioned reasons, this court is without subject matter jurisdiction in this matter. Given this determination, the federal defendants' motion to dismiss must be, and hereby is, GRANTED.

It is so ordered.