Slip Op. 00 - 31

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| WILLIAM T. CONNOR II, AS TRUSTEE OF THE WILLIAM T. CONNOR II LIVING TRUST, | : | |
| Plaintiff, | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| THE UNITED STATES, | : | Court No. 99-02-00094 |
| Defendant. | : | |

[Defendant's Motion to Dismiss granted.]

Decided: March 27, 2000

*Joel R. Junker*, P.C. (*Joel R. Junker*), for plaintiff.

*David W. Ogden*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*James A. Curley*); of counsel: *Beth C. Brotman*, Office of Assistant Chief Counsel, United States Customs Service, for defendant.

## MEMORANDUM OPINION AND ORDER

In this action, Plaintiff William T. Connor, II, Trustee of the William T. Connor II Living Trust ("the Trust"), seeks judicial review of a pre-importation ruling issued by the United States Customs Service ("Customs") concerning the classification of a 1929 Bentley Blower racing car ("the Bentley" or "the automobile"). Plaintiff alleges jurisdiction and requests that the Court issue a declaratory judgment pursuant to 28 U.S.C. § 1581(h), which provides that

[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

Presently before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction based, *inter alia*, on the ground that plaintiff has not demonstrated that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to importation. For the reasons set forth herein, Defendant's motion is granted, and this action is dismissed.

### *Background*

On December 23, 1997, Plaintiff filed a ruling request with Customs pursuant to 19 C.F.R. § 177.[1] In this request, Plaintiff asserted that the Bentley should be classified under subheading 9705.00.0090 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which provides for duty-free entry of "[c]ollections, and collector's pieces of zoological, botanical, mineralogical, anatomical, historical, archeological, paleontological, ethnographic, or numismatic interest. Other." Plaintiff argued that this classification was appropriate because the Bentley is a collector's item and, as such, it will not be used for any utilitarian purpose. The automobile will instead be entered in

---

[1] 19 C.F.R. § 177.1(a)(1), regarding prospective transactions, states that

[i]t is in the interest of the sound administration of the Customs and related laws that persons engaging in any transaction affected by those laws fully understand the consequences of that transaction prior to its consummation. For this reason, the Customs Service will give full and careful consideration to written requests from importers and other interested parties for rulings or information setting forth, with respect to a specifically described transaction, a definitive interpretation of applicable law, or other appropriate information.

classic car shows and made available for display in the Peterson Automobile Museum in the Natural History Museum of Los Angeles County.  Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp. Br."), Ex. 1, Pl.'s Ruling Req., at 2.

On November 5, 1998, Customs ruled that the Bentley did not meet the requirements for classification under HTSUS 9705.00.0090 because "[t]he guidelines of the [Explanatory Notes] indicate a narrow interpretation of coverage under [the heading]", and the Bentley did not fit under the list of samples. Def.'s Br. in Supp. of Mot. to Dismiss, Ex. 1, HQ 961279, at 3.

On February 22, 1999, Plaintiff filed the present action seeking judicial review of Customs' ruling.  Defendant, after answering the complaint, filed the Motion to Dismiss which is now before the Court.

### *Discussion*

Defendant argues that the Court does not have jurisdiction because Plaintiff has not demonstrated, as required by 28 U.S.C. § 1581(h), that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to importation.  Generally, "[w]hen a jurisdictional issue is raised, the burden rests on the plaintiff to prove that jurisdiction exists."  *Heartland By-Products, Inc. v. United States*, __CIT__ , 74 F. Supp. 2d 1324, 1330 (1999) (quoting *Manufacture de Machines du Haut-Rhin v. Von Rabb*, 6 CIT 60, 62, 569 F. Supp. 877, 880 (1983)) (citation omitted).  Pursuant to 28 U.S.C. § 2639(b), the plaintiff in a § 1581(h) action must prove irreparable harm by clear and convincing evidence, which means that there must be proof that the harm is highly probable.  *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1105 (9th Cir. 1992).

Recently, in *Heartland By-Products* the Court summarized its jurisprudence regarding the irreparable harm requirement of § 1581(h):

> Irreparable harm is that which "cannot receive reasonable redress in a court of law." *Manufacture de Machines du Haut-Rhin v. Von Rabb*, 6 CIT at 64, 569 F. Supp. at 881-82 (1983) (quoting Black's Law Dictionary 706-707 (5th ed. 1979)). "In making this determination, what is critical is not the magnitude of the injury but rather its immediacy and the inadequacy of future corrective relief." *National Juice Products v. United* States, 10 CIT 48, 53, 628 F. Supp. 978, 984 (1986) (citations omitted). To fulfill its burden, Plaintiff must "set forth sufficient documentation to support its allegations in establishing the threat of irreparable harm." *Thyssen Steel Co., Southwestern Division of Thyssen, Inc. v. United States*, 13 CIT 323, 326, 712 F. Supp. 202, 204 (1989) (citing *718 Fifth Avenue Corp. v. United States*, 7 CIT 195, 198 (1984)).

*Heartland By-Products*, 74 F. Supp. 2d at 1330. Based on this precedent, Plaintiff must show clear and convincing evidence of an immediate harm for which there will be no adequate future relief in order to establish jurisdiction in the case at bar.

Several prior cases of this Court illustrate the requisite standard. In *Heartland By-Products*, the Court found a threat of irreparable harm where the plaintiff, an importer of sugar syrup, produced evidence that a new Customs ruling would destroy its business. 74 F. Supp. 2d at 1330-31. Specifically, the ruling would have reclassified the plaintiff's product under a heading with a 7000 percent higher tariff rate, thereby forcing the plaintiff's customers to seek another supplier. *Id*. at 1330. Moreover, in *American Frozen Food Institute, Inc. v. United States*, 18 CIT 565, 855 F. Supp. 388 (1994), the Court found a threat of irreparable harm where the plaintiffs, who were in the business of packaging and marketing frozen produce, provided evidence that they would incur tremendous costs in having to destroy old labels and produce new ones to comply with a Treasury Decision regarding country-of-origin markings. 18 CIT at 570-71, 855 F. Supp. at 393-94. These costs could not be recovered even if they ultimately prevailed in their case after changing the labels and importing the goods. *Id*. In another case involving country-of-origin labeling requirements, *National Juice Products Association v. United States*, 10 CIT 48, 628 F. Supp. 978 (1986), the Court

found a threat of irreparable harm where the plaintiffs provided evidence that they would suffer severe business disruption because they could not comply with the new requirements by the required deadline.  10 CIT at 53-54, 628 F. Supp. at 984-85. Plaintiffs also proved that they would suffer significant financial loss from having to destroy old labels and produce new ones to achieve compliance and could not recover these costs even if they ultimately prevailed in their case after importing the goods. 10 CIT at 54, 628 F. Supp. at 985.

In the present case, Plaintiff alleges that if he is not afforded judicial review prior to importing the Bentley, he will be subject to "an immediate, unnecessary, and unacceptable risk of irreparable loss by shipping the unique, rare, and irreplaceable Bentley Blower just to 'exhaust administrative remedies.'"  Pl.'s Resp. Br. at 17.  However, Plaintiff has not produced clear and convincing evidence that the Bentley will be damaged or destroyed in shipment.  Plaintiff has argued that "ships sink and planes crash," Pl.'s Resp. Br. at 14, but in order to prove jurisdiction under 28 U.S.C. § 1581(h) Plaintiff must show, as in the cases discussed above, that there is an immediate threat that the harm will occur, not just an immediate threat that the harm *could* occur. *See National Juice Products Association*, 10 CIT at 53, 628 F. Supp. at 984 ("[W]hat is critical is . . . [the injury's] immediacy and the inadequacy of future corrective relief.").

The present case is also factually distinguishable from those cases where the Court found irreparable harm in that Plaintiff is not under any contractual obligation to import the Bentley, and could decide either to keep the car in its present location, or to move it to a different country.  As John L. Shadek, legal counsel to the Trust, states in his affidavit,

> [p]art of the considerations in possibly selecting the United States as a situs for the Trust's collection includes the treatment by US Customs of the importation of the consolidated collection of the Trust.  It is not worth the Trust's taking the risk of irreplaceable and non-compensable loss of a rare antique automobile of significant

> historical and commercial value simply for the purposes of determining whether US Customs' treatment of the Trust's collection is appropriate to siting the Trust's collection in the United States. In other words, it is imprudent for the Trust to undertake the risk of irreplaceable and non-compensable harm just to determine Customs' treatment of the importation as a precondition to determining whether the United States is an appropriate situs for consolidation of its collection of rare antique automobiles.

Pl.'s Resp. Br., Ex. 4, Shadek Aff. ¶ 5. The plaintiffs in *Heartland By-Products*, *American Frozen Food Institute*, and *National Juice Products Association*, *supra*, did not have an option such as this because their business contracts obligated them to import their respective goods into the United States. Thus, in the present case, even if Plaintiff proved that he would suffer actual harm, as opposed to the risk of harm, by importing the Bentley to obtain judicial review, the harm would not be imminent because Plaintiff could elect not to import the automobile.

As to the inadequacy of future relief, Plaintiff has provided considerable evidence in the form of book excerpts and magazine and newspaper articles to support his claim that the Bentley is a unique automobile, which could not be replaced if it were destroyed. However, Plaintiff has not cited any evidence to support his claim that the automobile would be of less value if its original elements were damaged and repaired. Nevertheless, even if Plaintiff proved the inadequacy of future corrective relief, this alone would not defeat Defendant's motion to dismiss. In order to prevail, Plaintiff must show both the immediacy of injury *and* the inadequacy of future corrective relief. As stated above, Plaintiff has not provided evidence of an imminent injury. Therefore, the Court does not have subject matter jurisdiction over this case, and it must be dismissed.

Plaintiff presents two alternative grounds to support the Court's jurisdiction in the absence of a showing of irreparable harm. First, Plaintiff argues that the Court has erred as a matter of law in setting the same requirements for proving irreparable harm in the context of requests for injunctive

relief and § 1581(h) actions.  Plaintiff notes that where equitable relief is sought, "the 'irreparable harm' requirement functions as a check on unreasonable use or abuse of the exercise of [the Court's] inherent powers unrestricted by statute."  Pl.'s Resp. Br. at 18.  Plaintiff contrasts this function of the irreparable harm requirement with its function in a § 1581(h) case, where it "is an element of an affirmative statutory grant of jurisdiction."  *Id.*  Plaintiff proposes that the proximity of the harm should not be a factor in a case brought under § 1581(h) because this consideration "has limited relevance inasmuch as review of rulings on contemplated importations . . . involves anticipated, prospective activity and because no one's interests are impinged by the court's granting relief on a finding of 'irreparable harm' in advance of hearing the merits."  *Id.* at 19.  Plaintiff argues that the test for irreparable harm under "§ 1581(h) should be based first and foremost on whether the harm involves risk injury [*sic*] for which a monetary reward cannot be adequate compensation and injury that cannot receive reasonable redress in a court of law."  *Id.*

The Court has previously recognized that "[t]he standard for proving irreparable harm [in a § 1581(h) case] is essentially identical to that used to determine irreparable injury in cases where injunctive relief is sought." *718 Fifth Avenue Corp. v. United States*, 7 CIT 195, 196 n. 3 (1984) (citing *Manufacture de Machines du Haut-Rhin v. Von Rabb*, 6 CIT 60, 569 F. Supp. 877 (1983)). Moreover, Congress intended § 1581(h) to provide jurisdiction only under exceptional circumstances. *See Manufacture de Machines du Haut-Rhin*, 6 CIT at 63, 569 F. Supp. at 882; H.R. Rep. No. 96-1235 at 47 (1980) *reprinted in* 1980 U.S.C.C.A.N. 3729, 3758 (pre-importation judicial review "is exceptional and is authorized only when the requirements of subsection (h) are met."). In this regard, review under § 1581(h) is similar to a grant of equitable relief, which is available only under extraordinary circumstances. *See Wolverine Tube (Canada), Inc. v. United States*, __CIT __,

36 F. Supp. 2d. 410, 412 (1999).  In both instances, irreparable harm is one of the essential factors

for establishing that such exceptional or extraordinary circumstances exist.  *Compare Wolverine*

*Tube (Canada), Inc.*, 36 F. Supp. 2d at 412 *with National Juice Products Association*, 10 CIT at 51,

628 F. Supp. at 982.  Thus, it is appropriate for the Court to use the same standard for proving

irreparable harm in both injunctive relief and § 1581(h) actions.

Plaintiff also argues that the Court can maintain jurisdiction over this case under 28 U.S.C.

§ 1581(i).[2]  Under normal circumstances, if jurisdiction does not lie under § 1581(h), a plaintiff must

import the merchandise in question, file a protest with Customs regarding the classification decision,

and fully exhaust its administrative remedies.  *See* H.R. Rep. No. 96-1235 at 46 (1980) *reprinted in*

1980 U.S.C.C.A.N. 3729, 3758.  If an issue still remains, the plaintiff can then seek review by this

---

[2]  28 U.S.C. § 1581(i) provides, in pertinent part, that

> [i]n addition to the jurisdiction conferred upon the Court of
> International Trade by subsections (a)-(h) of this section and subject
> to the exception set forth in subsection (j) of this section, the Court of
> International Trade shall have exclusive jurisdiction of any civil
> action commenced against the United States, its agencies, or its
> officers, that arises out of any law of the United States providing for--
>
> (1) revenues from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the
> importation of merchandise for reasons other than
> the raising of revenue;
>
> (3) embargoes or other quantitative restrictions on
> the importation of merchandise for reasons other
> than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to
> the matters referred to in paragraphs (1)-(3) of this
> subsection and subsections (a)-(h) of this section.

Court pursuant to 28 U.S.C. § 1581(a).[3] The Court has previously stated that "section 1581(i) cannot be used to circumvent the procedures set forth by section 1581(a)." *Manufacture de Machines du Haut-Rhin*, 6 CIT 60, 65, 569 F. Supp. 877, 882 (citing *United States v. Uniroyal*, 69 CCPA 179, 687 F.2d 467 (1982)). Furthermore, in *Lowa, Ltd. v. United States*, 5 CIT 81, 561 F. Supp. 441 (1983), *aff'd*, 724 F.2d 121 (Fed. Cir. 1984), the Court stated

> this court has subject matter jurisdiction under section 1581(i) of a cause of action, which otherwise would be within section 1581(a), only when the relief available under section 1581(a) is manifestly inadequate or when necessary, because of special circumstances, to avoid extraordinary and unjustified delays caused by the exhaustion of administrative remedies.

5 CIT at 88, 561 F. Supp. at 447. *See Manufacture de Machines du Haut-Rhin*, 6 CIT at 65, 569 F. Supp. at 882-83; *United States Sugar Cane Refiners' Association v. Block*, 69 CCPA 172, 175, 683 F.2d 399, 402 (1982). In the present case, Plaintiff claims that relief under § 1581(a) is inadequate because the Trust may wish to import other classic automobiles, and it is likely that the classification of these automobiles will have to be reviewed on a case by case basis, resulting in "extraordinary and unjustified delays." Pl.'s Reply Br. at 19.

The Court notes that, as a procedural matter, § 1581(h) is the only jurisdictional basis alleged in the complaint, *see* Compl. ¶ 2, and Plaintiff has not moved to amend the complaint and include § 1581(i) as an alternative basis for jurisdiction. Substantively, the present case involves only one automobile, the Bentley. *See* Compl. ¶ 1. Although Plaintiff may import other automobiles in the future, that possibility is only speculative at this point, and not at issue in this action. Thus, the prospective importation of other automobiles in Plaintiff's collection is irrelevant to the

---

[3] 28 U.S.C. § 1581(a) provides that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."

determination of whether § 1581(a) provides adequate relief in the matter presently before the Court. Plaintiff has not presented any evidence which suggests that proceeding under § 1581(a) is "manifestly inadequate" or will cause "extraordinary and unjustified delays" with regard to determining the correct classification of the Bentley. Therefore, there is no basis for jurisdiction under § 1581(i).

### *Conclusion*

For the foregoing reasons, Defendant's Motion to Dismiss is granted.

So ordered.

_____
                 R. KENTON MUSGRAVE, JUDGE

Dated: March 27, 2000
            New York, New York