THYSSEN STEEL CO., SOUTHWEST-ERN DIVISION OF THYSSEN INC., Plaintiff,

v.

UNITED STATES of America, Defendant,

The Committee of Domestic Steel Wire Rope and Specialty Cable Manufacturers, Defendant–Intervenor.

Court No. 88–12–00944.

United States Court of International Trade.

April 13, 1989.

Windels, Marx, Davies & Ives (Jonathon R. Moore), New York City, for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, New York City, (Al J.

Daniel, Jr.), Washington, D.C., for defendant.

Harris & Ellsworth (Herbert E. Harris, II and Cheryl Ellsworth), Washington, D.C., for defendant-intervenor.

## OPINION

### TSOUCALAS, Judge:

The present action is before the Court on plaintiff's (Thyssen Steel Co., Southwestern Division of Thyssen Inc.) 56.1(e) motion for judgment upon the agency record regarding Treasury Decision 88–78, 22 Cust. Bull. 1, 53 Fed.Reg. 49,117 (Dec. 6, 1988), which changed the tariff classification of certain wire rope with becket attachments or becket loops. Defendant, United States, and defendant-intervenor, The Committee of Domestic Steel Wire Rope and Specialty Cable Manufacturers, have moved to dismiss for lack of jurisdiction pursuant to USCIT Rule 12(b)(1). Oral argument was had on the jurisdictional issue on February 9, 1989. Due to the potential hardship to plaintiff, the Court ordered an expedited litigation schedule.

## BACKGROUND

Plaintiff seeks to challenge the change in tariff classification of the subject merchandise by the United States Customs Service (Customs) in Treasury Decision 88–78.[1] The ruling reclassifies the subject merchandise as steel rope not fitted with fittings,

1. The ruling became effective on January 20, 1989, 30 days after publication. T.D. 88–78. Notice of the proposed rule was published on October 1, 1987. 52 Fed.Reg. 36,789.

2. The merchandise had originally been classified under item 642.20, TSUS, as wire ropes, cable or cordage fitted with hooks, swivels, clamps, clips, thimbles, sockets or other fittings.

3. Four percent ad valorem if classified under 642.16, TSUS, 4.4% ad valorem if classified under 642.14, TSUS, as opposed to 5.7% ad valorem under the previous classification, 642.20, TSUS.

4. The applicable VRAs are agreements between the United States and certain steel producing countries, such as the Republic of South Korea, Japan and the European Economic Community, to voluntarily limit exports to the United States of certain basic steel products. T.D. 88–78. The

item 642.16, Tariff Schedules of the United States (TSUS), or if of stainless steel, under 642.14, TSUS. The new classification[2] results in the benefit of a lower rate of duty for the merchandise,[3] but also makes the product subject to voluntary restraint arrangements (VRA), which prohibit the importation without visas of certain steel products from the European Community.[4] Pursuant to the VRAs, plaintiff is allocated a certain amount of quota based on its prior sales to the United States, and has the option of purchasing additional unused quota from other suppliers. Plaintiff claims the Court has jurisdiction to entertain the challenge under 28 U.S.C. § 1581(h) and/or § 1581(i).

## DISCUSSION

### *Section 1581(h)*

This Court may review a ruling issued by the Secretary of Treasury relating to the classification of merchandise when the importer has demonstrated that "he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation." 28 U.S.C. § 1581(h);[5] *see also Manufacture de Machines du Haut–Rhin v. von Raab*, 6 CIT 60, 63, 569 F.Supp. 877, 880–81 (1983).

Section 1581(h) has four requirements to invoke its jurisdiction:

(1) judicial review must be sought *prior* to importation of goods;

imports of the steel products are not entitled to admission into the United States unless accompanied by the necessary visa. *Id.*

5. Section 1581(h) reads as follows:

(h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

(2) review must be sought of a ruling, a refusal to issue a ruling or a refusal to change such ruling;

(3) the ruling must relate to certain subject matter; and

(4) irreparable harm must be shown unless judicial review is obtained *prior to* importation.

*American Air Parcel Forwarding Co. v. United States*, 2 Fed.Cir. (T) 1, 7, 718 F.2d 1546, 1551–52 (1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984) (emphasis in original); *National Juice Products Ass'n v. United States*, 10 CIT 48, 51, 628 F.Supp. 978, 982 (1986).

The first three requirements are not disputed. The only jurisdictional issue regarding § 1581(h) is whether plaintiff will suffer irreparable harm should it not obtain judicial review. Since defendant has challenged jurisdiction under § 1581(h), plaintiff has the burden of demonstrating that jurisdiction exists. *National Juice*, 10 CIT at 51, 628 F.Supp. at 982; *Lowa, Ltd. v. United States*, 5 CIT 81, 83, 561 F.Supp. 441, 443 (1983), *aff'd*, 2 Fed.Cir. (T) 27, 724 F.2d 121 (1984).

Plaintiff contends that adhering to the ordinary protest procedure under § 1581(a), which requires the exhaustion of remedies pursuant to 19 U.S.C. §§ 1514 and 1515, would cause its business irreparable harm due to the delay inherent within that procedure, even if it used the expedited schedule available in 19 C.F.R. § 174.22 and 19 U.S.C. § 1515. The peculiar nature of the product, plaintiff continues, requires substantial lead time in ordering the merchandise from manufacturers.[6] According to plaintiff, this substantial lead time necessitates placing orders immediately so as to avoid possible business disruption. Filling current orders is unlikely, plaintiff states, because of the inadequate supply of VRA quota, and customers must be assured of a continuous supply of drag and hoist lines or they will seek other suppliers.[7] Once these customers are lost, plaintiff submits that it will not be able to reacquire their business; hence, the irreparable injury.

Without a clear showing of irreparable injury, failure to exhaust administrative remedies will serve as a bar to judicial intervention in the administrative process. *American Institute for Imported Steel, Inc. v. United States*, 8 CIT 314, 317, 600 F.Supp. 204, 208 (1984). Business disruption resulting from the delay of exhausting the administrative process demonstrates irreparable harm in some instances. *See 718 Fifth Avenue Corp. v. United States*, 7 CIT 195, 198, 1984 WL 3661 (1984); *National Juice*, 10 CIT at 54, 628 F.Supp. at 984; *Tropicana Products, Inc. v. United States*, 3 CIT 171, 175–76, 1982 WL 2229 *modified*, 3 CIT 240, 1982 WL 2234 (1982). Plaintiff, however, must set forth sufficient documentation to support its allegations in establishing the threat of irreparable harm. *718 Fifth Avenue*, 7 CIT at 198 (citing *Di Jub Leasing Corp. v. United States*, 1 CIT 42, 505 F.Supp. 1113 (1980)). Plaintiff bears a heavy burden in producing this evidence. *American Institute*, 8 CIT at 318, 600 F.Supp. at 209.

Plaintiff in the instant action has not met this burden. It has not put forth satisfactory evidence reflecting the unavailability of quota or its inability to supply customers with drag and hoist lines. The only evidence presented was an affidavit by Mr. Wesslen, who stated that "Thyssen has continued to make inquires concerning the

---

**6.** Mr. Johan Wesslen, Vice-president of Thyssen Steel Co., stated that "[t]hese lead times can be as short as 8 weeks where stock is available at the mill on master reels, which need to be cut to length and fitted with welded links or ferrule becket loops before shipment. If inventory is not available on master reels at the mill, however, it can take 5 months or longer for an order to be delivered because the wire rope itself must be manufactured." Wesslen Affidavit at ¶ 3.

**7.** Plaintiff avers that the approximate life expectancy of drag lines and hoist lines is three and six months respectively, but that these lines can break at any time. Plaintiff claims to typically maintain three back-up sets of drag lines and two back-up sets of hoist lines; and if a hoist line broke immediately, it would have to order immediately in order to avoid disruption. The continuous supply is critical, plaintiff continues, due to the high cost of down-time ($3,000 to $10,000 per hour) on surface mining machines on which plaintiff's products are used. *See* Wesslen Affidavit at ¶¶ 5 and 6.

possibility of purchasing additional quota, and has found that no excess quota is currently available for purchase...." Wesslen Affidavit at ¶ 20. Plaintiff has not introduced witnesses, proofs or affidavits from any other source indicating that it has attempted to purchase quota but failed, or that sellers would not be willing to part with a portion of their allotted quota. "Where irreparable injury is not demonstrated by 'probative evidence'" extraordinary relief should not be granted. *Id.* at 318, 600 F.Supp. at 209.

Moreover, plaintiff has not demonstrated that regardless of quota availability, the threat of irreparable harm is actual and imminent. Plaintiff assumes that it will not be able to meet its customers' needs but has not put forth appropriate documentation to support that conclusion. "A presently existing, actual threat must be shown." *S.J. Stile Associates Ltd. v. Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981); *National Juice,* 10 CIT at 53, 628 F.Supp. at 984. The mere possibility of injury, even where prospective injury is great, is not sufficient to justify court intervention. *S.J. Stile,* 68 CCPA at 30, 646 F.2d at 525.

Whatever harm plaintiff actually suffers is due to its own lack of good business judgment. It was well aware, in advance, of Customs' intention to alter the subject merchandise's classification under the TSUS, yet, took no steps in anticipation of the proposed change. Customs published notice of the proposed ruling on October 1, 1987, more than a year prior to the final reclassification of the merchandise. 52 Fed.Reg. 36,789. Plaintiff's attempt to justify this inaction is unacceptably feeble: that prudent business judgment dictated not relying on the proposed reclassification because "Customs' 'track record' for elapsed time in publishing a 'final rule' after issuing notice of the proposed rule was between 10 to 21 months." Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dis-

miss for Lack of Subject–Matter Jurisdiction and to Intervenor–Defendant's Motion to Dismiss for Lack of Jurisdiction and to Stay the Proceeding at 19 [hereinafter "Plaintiff's Memorandum"]. The Court does not believe a prudent businessperson would have acted in such a manner. *See, e.g., American Air Parcel,* 2 Fed.Cir. (T) at 6, 718 F.2d at 1551 (importers aware prior to importation that the basis for valuation was disputed yet entered transactions placing themselves in a precarious position).

Furthermore, the type of harm plaintiff may suffer as a result of the reclassification of its merchandise is not the type of harm contemplated by § 1581(h). This court has explicitly stated that

> [t]he irreparable harm contemplated by section 1581(h) is the harm that may be visited upon an importer by requiring the importation of merchandise and requiring the importer to go through the administrative process.... *[It is not the] harm resulting from the exclusion of merchandise—lost profits, lost opportunities to make agreements for sale of its product, lost goodwill, and tarnished good name.*

*Manufacture de Machines,* 6 CIT at 63, 569 F.Supp. at 881 (emphasis added).

Plainly, the harm asserted by plaintiff here fits squarely within the definition of harm outlined above, *i.e.,* lost profits, lost good will, and tarnished good name.[8] "If the adverse effect of receiving an unfavorable ruling was sufficient alone to establish irreparable harm, then any importer aggrieved by a ruling could invoke this court's declaratory judgment jurisdiction." *718 Fifth Avenue,* 7 CIT at 197. Plaintiff is not irreparably harmed by a binding agency ruling contrary to its position. *Id.* (citing *United States v. Uniroyal, Inc.,* 69 CCPA 179, 687 F.2d 467 (1982)). To reiterate, plaintiff was aware of Customs' consideration to reclassify the merchandise and had the opportunity to adjust its busi-

---

**8.** *See also Arbor Foods, Inc. v. United States,* 8 CIT 355, 359, 600 F.Supp. 217, 220 (1984), where the court held that there was no showing of irreparable harm when plaintiff alleged injury in the form of lost sales, lost benefits from past marketing, injury to its reputation as a reliable supplier, and the costs required for developing new products.

ness in anticipation of the issuance of T.D. 88–78, but neglected to take any action.

The Court is cognizant that evidence of substantial harm to business good will, business reputation and a significant loss of new business has been held to constitute irreparable injury. *See American Customs Brokers Co. v. United States*, 10 CIT 385, 637 F.Supp. 218 (1986); *Mutual of Omaha v. Novak*, 775 F.2d 247, 249 (8th Cir.1985) (irreparable injury found based on injury to business reputation and good will arising from alleged trademark infringement); *National Juice*, 10 CIT at 54, 628 F.Supp. at 984 (the suppliers were unable to provide the necessary labels and cans by the effective date of a Customs Service Decision, and the unavailability of such packaging would have resulted in the inability to fill orders placed by retail customers. The transition to packaging complying with the new ruling would take a year to two and one-half years); *Lois Jeans & Jackets, U.S.A. v. United States*, 5 CIT 238, 242, 566 F.Supp. 1523, 1527 (1983) (irreparable injury was found when defendants actions resulted in the loss to plaintiff of past and future sales, injury to plaintiff's reputation as a reliable supplier, and potential costs required for altering plaintiff's production methods). However, in each of those actions, the plaintiff had adequately documented its allegations of irreparable harm. Plaintiff here has made no commensurate showing.

On the face of this evidence and absent a more explicit representation, the Court cannot conclude that plaintiff has met its burden,[9] therefore, the Court cannot find jurisdiction under § 1581(h).

*Section 1581(i)*

Section 1581(i) in broad language "grants the court residual jurisdiction of any civil action arising out of the enforcement or administration of the customs laws...." *Lowa*, 5 CIT at 87, 561 F.Supp. at 446. Where a litigant has access to the court by traditional means, such as under 1581(a), it must avail itself of that avenue of approach and comply with all relevant prerequisites. It cannot circumvent these prerequisites by invoking jurisdiction under § 1581(i), unless the remedy provided under another subsection of § 1581 would be manifestly inadequate, *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) (citing *United States v. Uniroyal, Inc.*, 69 CCPA 179, 187, 687 F.2d 467, 475 (1982) (Nies, J., concurring)), or "when necessary, because of special circumstances, to avoid extraordinary and unjustified delays caused by the exhaustion of administrative remedies." *Lowa*, 5 CIT at 88, 561 F.Supp. at 447; *American Ass'n of Exporters v. United States*, 7 CIT 79, 84, 583 F.Supp. 591, 596 (1984), *aff'd*, 3 Fed.Cir. (T) 58, 751 F.2d 1239 (1985). Recourse to 19 U.S.C. § 1514 and § 1515 for the exhaustion of administrative remedies is not required when it would be futile. *United States Cane Sugar Refiners' Ass'n v. Block*, 3 CIT 196, 201, 544 F.Supp. 883, 887, *aff'd*, 69 CCPA 172, 683 F.2d 399 (1982). The party asserting § 1581(i) jurisdiction has the burden to demonstrate the manifest inadequacy of the remedy under the other subsections. *Miller*, 824 F.2d at 963.

Plaintiff demands recourse through § 1581(i) because it believes that going through the normal administrative procedure would be "hopeless and futile." The basis of plaintiff's belief is that the issues herein have already been decided by the highest levels of Customs and Treasury in their decision to revoke Ruling 808452, by T.D. 88–78.[10] Therefore, plaintiff concludes that as a practical matter, no protest

---

**9.** *Cf. American Institute*, 8 CIT at 318, 600 F.Supp. at 209 (plaintiff produced no evidence that additional injuries would occur, made no showing that delays of less than a month would violate the terms of any contract, made no showing that time was the essence of any contract, and made no showing that they could not substitute other steel products either from their own inventories or from other sources and thereby eliminate potential customer dissatisfaction).

**10.** Ruling 808452 classified the subject merchandise under item 642.20, TSUS, and plaintiff claims to have "prepared and filed exhaustive briefs in support of an affirmation" of the ruling before various Customs officials. *See* Plaintiff's Memorandum at 3–4.

filed would be sustained. Plaintiff relies on the decisions in *Springfield Industries Corp. v. United States,* 12 CIT ——, 655 F.Supp. 506 (1987) and in *United States Cane Sugar and Refiners Ass'n v. Block,* 69 CCPA 172, 683 F.2d 399, as authority for jurisdiction under § 1581(i).

In *Springfield,*[11] the court rejected the government's suggestion that plaintiff exhaust its administrative remedies under § 1581(a), holding that since the Treasury Department had directed the conduct of the Customs Service, Customs was powerless to alter the classification of the merchandise. 12 CIT at ——, 655 F.Supp. at 507. The court concluded that the classification of the involved articles was "preordained" and any subsequent protest against that classification would be "hopeless and the exhaustion of administrative remedies would be futile." *Id.*

In *United States Cane Sugar,* plaintiff challenged the validity of a presidential proclamation which established country-by-country import quotas on sugar, and limited the total amount of sugar imported. The court refused to require the plaintiff to exhaust administrative remedies, finding that the Customs officials were legally foreclosed from granting the relief sought at the administrative level since the Customs officials who would review a protest would have no authority to override a presidential proclamation. 3 CIT at 201, 544 F.Supp. at 887.

Plaintiff perceives *Springfield* and *United States Cane Sugar* to be controlling in the case at bar. However, the common thread between *Springfield* and *United States Cane Sugar* is absent in the instant action. In those cases, Customs had no power to alter the directive from the higher authority. Here, Customs does have the authority to reconsider and reverse its determination. It was the Customs Service

that reclassified the merchandise and it is the Customs Service which can reverse the prior decision. *See* 19 C.F.R. § 174.26(b)(1)(iii). Therefore, review at the administrative level would not be "hopeless and futile." "[T]he fact that plaintiff may not succeed in its claim at the administrative level does not justify noncompliance with the statutory scheme enacted by Congress." *Wear Me Apparel Corp. v. United States,* 1 CIT 194, 198, 511 F.Supp. 814, 818 (1981). Plaintiff has made no showing that jurisdiction under § 1581(i) is warranted. Thus, the Court finds that jurisdiction is lacking.

## JUDGMENT

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DE-CREED: that defendant's and defendant-intervenor's motions to dismiss are granted, and the action is dismissed.

---

11. Plaintiff, importer of wire strand from South Africa, sought injunctive and declaratory relief under § 1581(i) against the inclusion of its product within the class of goods prohibited from importation under Section 320 of the Comprehensive Anti–Apartheid Act of 1986, Pub.L. No. 99–440, 100 Stat. 1086, (1986), as amended by House Joint Resolution 756, Pub.L. No. 99–631, Nov. 7, 1986. 12 CIT at ——, 655 F.Supp.

at 507. Plaintiff, there, claimed that "[t]he Treasury Department acted unlawfully when, in issuing regulations to enforce the provision of the Act that no steel produced in South Africa be imported into the United States, it included products classifiable under" the applicable TSUS provision which included plaintiff's merchandise. *Id.*