**TOHO TITANIUM CO., LTD., Plaintiff,**

v.

**UNITED STATES, Defendant,**

**and**

**RMI Company, Defendant–Intervenor.**

**Court No. 89–05–00248.**

United States Court of International Trade.

July 30, 1990.

*Sponge from Japan; Final Results of Antidumping Duty Administrative Review and Tentative Determination to Revoke in Part,* 54 Fed.Reg. 13,403 (Apr. 3, 1989). The Court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) (1988) and 28 U.S.C. § 1581(c) (1988).

Toho contests the date of sale established by the United States Department of Commerce, International Trade Administration for one sale, and requests an order that Commerce recalculate the dumping margin. The Court finds that Commerce did not abuse its discretion in establishing the date of sale and that its determination is supported by substantial evidence and is in accordance with law. Toho's motion for judgment on the agency record is denied.

## BACKGROUND

On April 4, 1985, Toho entered into a three-year contract, which obligated its U.S. customer to purchase at a fixed price a specified minimum quantity of titanium sponge annually. The contract permitted the customer to order additional titanium sponge up to a stated maximum quantity at the same price. Conf. R. 6, Supp. Ex. 1 at 5-6. The contractual rights and duties between Toho and its customer were governed by California law.

In December 1986, Commerce initiated an administrative review of an antidumping order on Japanese titanium sponge. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 51 Fed. Reg. 45,364 (1986). In order to compare United States price (USP) and Foreign Market Value and set the rate for converting yen into dollars, Commerce determined that the date of sale for the minimum quantity specified in the contract, was April 4, 1985, the contract date. Once during the review period, Toho's customer ordered quantities above the minimum amount. Although, the price of this order was set in the April 4 contract, Commerce determined the date of sale for that order to be January 15, 1986, the purchase order date. Commerce found this later date to be the proper time of sale for quantities above the minimum stated in the contract because the customer

Graham & James, Patrick Fields, Yasuhiro Hagihara, and Denis H. Oyakawa, Los Angeles, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Washington, D.C., Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Vanessa P. Sciarra, Winnetka, Ill., Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Tina M. Stikas, Washington, D.C., for defendant.

Wilmer, Cutler & Pickering, John D. Greenwald and Stavros J. Lambrinidis, Washington, D.C., for defendant-intervenor.

DiCARLO, Judge:

Toho Titanium Co., Ltd. (Toho), a Japanese titanium manufacturer, moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record in its challenge to the final results of an administrative review of an antidumping order on titanium sponge from Japan. *Titanium*

was not committed to purchase the additional amount until it issued delivery instructions to Toho. 54 Fed.Reg. at 13,404.

In the interval between the date of the contract and the purchase order, the yen appreciated substantially. R. 45 at 56. This resulted in the calculation of a higher foreign-market value for Toho and an increased dumping margin of 0.83 percent. 54 Fed.Reg. at 13,406.

Toho argues that Commerce erred in setting the sales date for the additional quantities of titanium sponge as of the date of the purchase order rather than the date of the contract because: (1) Commerce improperly departed from its prior administrative practice and precedent; (2) the decision was not in accordance with California contract law; and (3) Toho was unreasonably and unfairly penalized for exchange-rate fluctuations which were beyond its control.

## DISCUSSION

### I. COMMERCE POLICY AND PRACTICE

■ To ascertain whether sales in the United States are at less than fair value, Commerce compares USP with Foreign Market Value of the imported merchandise as of the same date. 19 U.S.C. §§ 1677a, 1677b(a) (1988). In order to establish the appropriate date for comparison, Commerce must determine the date when a sale has taken place. *See Mitsubishi Elec. Corp. v. United States*, 12 CIT ——, 700 F.Supp. 538, 561 (1988), *aff'd*, 898 F.2d 1577 (Fed.Cir.1990); 19 U.S.C. §§ 1677a, 1677b(a) (1988). Commerce also uses the exchange rate on that date for converting foreign currency. 19 C.F.R. §§ 353.56 (1986).

Neither the statute nor the regulations define when exported merchandise is sold in the United States in terms of the time or date a sale is consummated. *Mitsubishi*, 12 CIT at ——, 700 F.Supp. at 561. According to Commerce's practice, a sale is complete within the meaning of the statute when the essential terms of the transaction, including price, are set. *See id.* at

——, 700 F.Supp. at 561; *Atlantic Steel Co. v. United States*, 10 CIT 340, 343, 636 F.Supp. 917, 920 (1986).

Toho alleges that Commerce impermissibly deviated from this practice without reasonable justification when it set the date of sale for the additional quantities of titanium sponge as of the purchase order date of January 15, 1986. Toho claims that all essential terms of the sale were fixed as of the date of the contract on April 4, 1985, and that Commerce failed to give proper consideration to the pricing term in the sales contract, which irrevocably set the price as of that date.

In addition to price, Commerce considers quantity to be an essential term in establishing when a sale has occurred. *See Brass Sheet and Strip From France*, 52 Fed.Reg. 812, 814 (1987); *Certain Forged Steel Crankshafts from the Federal Republic of Germany*, 52 Fed.Reg. 28,170, 28,175 (1987); *64K Dynamic Random Access Memory Components (64K DRAM's) From Japan*, 51 Fed.Reg. 15,943, 15,953 (1986); *Erasable Programmable Read Only Memories (EPROMs) From Japan*, 51 Fed.Reg. 39,680, 39,681 (1986); *Cellular Mobile Telephones and Subassemblies From Japan*, 50 Fed.Reg. 45,447, 45,456 (1985). When an essential term in a sales contract is indefinite, Commerce's practice is to treat the contract as the point of sale only when the indefinite term will be set by some mechanism or formula outside of the parties' control. *See, e.g., Voss Int'l Corp. v. United States*, 67 CCPA 96, 105–06, C.A.D. 1253, 628 F.2d 1328, 1334–35 (1980) (use of exchange rate to set price in a sales contract was a mechanism outside the parties' control); *see also Brass Sheet and Strip From France*, 52 Fed.Reg. at 814; *Offshore Platform Jackets and Piles From Japan*, 51 Fed.Reg. 11,788, 11,793–94 (1986); *Cellular Mobile Telephones and Subassemblies From Japan*, 50 Fed.Reg. at 45,456.

Toho argues that Commerce's date-of-sale determination is inconsistent with Commerce's determinations in *Brass Sheet and Strip From France*, 52 Fed.Reg. 812 (1987) and *Offshore Platform Jackets and*

*Piles From Japan,* 51 Fed.Reg. 11,788 (1986). Toho claims that in those cases, Commerce set the date of sale as the date of the respective sales contract even though the customer had the discretion subsequently to set certain terms. These determinations are, however, distinguishable. In *Brass Sheet and Strip,* the metal value component of price was set "prior to shipment based on publicly quoted sources as of a date chosen by the customer during a period specified in the contract." 52 Fed. Reg. at 814. Commerce found that the price term was nonetheless fixed as of the contract date because metal value:

> will be established prior to shipment based on publicly quoted sources as of a date chosen by the customer during a period specified in the contract. Because the publicly quoted metal value sources were established as the sole source of the metal value, and because the parties agreed on the time period during which the customer could lock in the publicly quoted metal value, no further negotiations were necessary between the parties to determine the price.

*Id.*

Similarly, in *Offshore Platform Jackets,* Commerce stated that a contract term providing that the customer could submit change orders

> established certain formulae for the determination of the amount of these change orders, including unit costs of materials and equipment, as well as labor costs. At the time the contract was issued, the price of the contract was "determinable" in the sense that there was basically nothing more on which the parties to the contract needed to agree.

51 Fed.Reg. at 11,793–94. In both cases, Commerce found that the indefinite contract terms were set by some mechanism or formula outside of the parties' control.

In this determination, Commerce found that:

> On the execution date of the contract, ... the customer had not yet agreed to purchase any quantities above the minimum and ... the decision as to whether to order any titanium sponge above the

minimum was totally left to the customer's discretion and, thus, was not determined by factors outside of the parties' control.

54 Fed.Reg. at 13,404. Thus, Commerce concluded that while the price term in the Toho sales contract was fixed, the quantity term was insufficiently established to determine that the additional quantities ordered were sold as of the date of the sales contract.

The contract bound Toho to deliver all quantities up to the stated maximum at the specified price. Had market price fallen, however, the customer was not precluded from renegotiating the contract price with Toho for quantities above the minimum stated in the contract or filling its requirements by purchasing on the open market. The purchase of additional quantities under the contract was solely within the customer's discretion and not set by some objective standard. Under these circumstances, Commerce could, within its discretion, find that the quantity term was indefinite and set the date of sale when the customer issued its delivery instructions to Toho. The Court holds that Commerce's finding is consistent with past administrative practice, is supported by substantial evidence, and is in accordance with law.

## II. STATE CONTRACT LAW

Toho argues that because the sales contract was a valid, binding, and enforceable obligation under California law as of April 4, 1985, the date of sale for all quantities purchased in the United States was the date of that agreement. It claims that "[i]n the absence of express statutory or regulatory authority, [Commerce's] established practice has been to look to state contract law to resolve 'date of sale' questions." Toho Memorandum at 16 (citing *Brass Sheet and Strip From France,* 52 Fed.Reg. at 814; *64 Dynamic Random Access Memory Components (64K DRAMS's) From Japan,* 51 Fed.Reg. at 15,947; *Cellular Mobile Telephones and Subassemblies From Japan,* 50 Fed.Reg. at 45,456).

None of the cited determinations refer to state law. Rather, they refer to general principles of contract law contained in treatises and the Uniform Commercial Code (UCC) in support of Commerce's policy that the basic terms governing quantity and price determine the definition of a sale.

Toho further claims that Commerce's bifurcated date-of-sale determination treated the agreement as two separate contracts. Toho alleges such treatment is contrary to California contract law because there is no evidence that the parties intended the contract to be severable. Toho asserts that assuming the portion of the agreement to purchase additional quantities was a separate option contract, under California law the exercise of an option relates back to the date the option was granted for the purpose of determining when the sale was made.

▆ The court has previously held that the UCC does not control Commerce's methodology in determining what constitutes a sale. *Atlantic Steel*, 10 CIT at 343, 636 F.Supp. at 920. This holding is equally compelling with respect to state contract law in determining date of sale under the trade laws of the United States. The phrase "date of sale" must be defined in a manner consistent with the purposes and principles underlying the trade laws. A contract enforceable under state law may be insufficiently definite under the trade laws for Commerce to conclude that a sale has occurred as of the date of the agreement. While Commerce is not precluded from referring to state contract law or general contract principles, it is not required to so.

Moreover, requiring Commerce to make its determination according to state contract law would result in the application of different methodologies dependent entirely upon the particular state law governing a contract. Such practice would be inconsistent with the uniform administration of the antidumping law.

At oral argument, Toho asserted that it would be better policy for Commerce to look to state law to determine when a sale has been made. The Supreme Court has stated that

federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of ... policy choices and resolving the struggle between competing views of the public interest are not judicial ones.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694, *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). Therefore, where Commerce is confronted with several policy options, the Court will not substitute its judgment for that of the agency.

## III. EXCHANGE–RATE CHANGES

Toho argues that because it had no legal right to alter its price or refuse to ship any additional quantities ordered, Commerce's date-of-sale determination for the additional quantities unfairly and unreasonably penalized Toho for intervening changes in the exchange rate which were beyond its control. Toho states the sales contract was a long-term contract. Plaintiff's Reply to Oppositions of Defendant United States and Defendant–Intervenor RMI Company to Plaintiff's Motion for Judgment upon Agency Record, at 2.

The Court is unpersuaded that Toho is being penalized for events outside its control. A Commerce regulation provides:

For purposes of fair value investigations, manufacturers, exporters, and importers concerned will be expected to act within a reasonable period of time to take into account price differences resulting from sustained changes in prevailing exchange rates.

19 C.F.R. § 353.56(b) (1988) (renumbered 19 C.F.R. § 353.60(b) (1989)). Under another regulation, Commerce will not take into account changes in exchange rates "[w]here prices under consideration are affected by *temporary* exchange rate *fluctuations....*" 19 C.F.R. § 353.56(b) (1988) (emphasis added). Thus, it is incumbent on a party to a long-term contract to take into account changes in exchange rates when setting its prices. *See Melamine Chems., Inc. v. United States,* 2 Fed.Cir. (T) 57, 65, 732 F.2d 924, 931 (1984).

Toho chose to enter into a three-year sales contract that, by setting fixed prices, did not adequately provide for changes in the value of the yen. Therefore, Toho bore the risk both that the yen would appreciate in the ten-month period between the contract and the purchase order for additional quantities of titanium sponge, and that this appreciation could lead to a higher dumping margin.

## CONCLUSION

The Court holds that Commerce did not abuse its discretion in establishing the date of sale and that its determination is supported by substantial evidence and is in accordance with law. Accordingly, Toho's motion for judgment on the agency record is denied. This action is dismissed.