**HOLFORD USA LTD. INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. No. 95–209.**
**Court No. 95–10–01298.**

United States Court of
International Trade.

Dec. 29, 1995.

Neville, Peterson & Williams (Margaret R. Polito, John M. Peterson, David C. Williams, New York City, and James A. Marino), for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, Amy M. Rubin, Karen P. Binder, Senior Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, New York City, for defendant.

## OPINION

RESTANI, Judge:

This matter is before the court on a motion for judgment upon the agency record pursuant to USCIT Rule 56.1(a) by plaintiff Holford USA Ltd. Inc. ("Holford") and on a cross-motion to dismiss for lack of jurisdiction pursuant to USCIT Rule 12(b)(1). Plaintiff contests a determination denying reconsideration of a ruling by the United States Customs Service ("Customs") that denied application of the "grandfather" clause of section 334(c) of the Uruguay Round Agreements Act to a pre-existing, long-term contract between Holford and Yiu Fat Company Ltd. ("Yiu Fat"). Plaintiff bases jurisdiction upon 28 U.S.C. § 1581(h) (1988) or, alternatively, 28 U.S.C. § 1581(i) (1988 & Supp. V 1993).

## BACKGROUND

On December 8, 1994, the President signed into law the Uruguay Round Agreements Act, Pub.L. No. 103–465, 108 Stat. 4809 (1994) ("URAA"). Section 334(a) of the URAA directs the Secretary of the Treasury to "prescribe rules implementing the principles contained in [section 334(b) ] for determining the origin of textiles and apparel products." 19 U.S.C. § 3592(a) (1994). The principles set out in section 334(b) provide, in relevant part:

(1) In General.—Except as otherwise provided for by statute, a textile or apparel product, for purposes of the customs laws and the administration of quantitative restrictions, originates in a country, ... and is the growth, product, or manufacture of that country ..., if—

(A) the product is wholly obtained or produced in that country ...; [or]

. . . .

(D) the product is any other textile or apparel product that is wholly assembled in that country ... from its component pieces.

19 U.S.C. § 3592(b) (1994). The effective date for Treasury's regulations is set forth in section 334(c), which provides:

(c) Effective date.—This section shall apply to goods entered, or withdrawn from

warehouse, for consumption on or after July 1, 1996, except that this section shall not apply to goods if—

(1) the contract for the sale of such goods to the United States is entered into before July 20, 1994;

(2) *all of the material terms of sale in such contract, including the price and quantity of the goods, are fixed and determinable before July 20, 1994;*

(3) a copy of the contract is filed with the Commissioner of Customs within 60 days after December 8, 1994, together with a certification that the contract meets the requirements of paragraphs (1) and (2); and

(4) the goods are entered, or withdrawn from warehouse, for consumption on or before January 1, 1998.

The origin of goods to which this section does not apply shall be determined in accordance with the applicable rules in effect on July 20, 1994.

19 U.S.C. § 3592(c) (1994) (emphasis added).

Holford, an importer and wholesaler of women's and men's garments, filed a copy of the Holford–Yiu Fat contract with Customs on February 6, 1995. An accompanying letter certified that the document was a true and accurate copy of the contract. Customs, however, determined that Holford's certification was deficient. Accordingly, on April 21, 1995, Customs granted Holford 30 days in which to submit a certification that complied with section 334(c)(3) of the URAA. Customs also requested that Holford articulate the basis for the company's certification that the material terms of the contract were fixed and determinable.

On May 9, 1995, Holford submitted a revised certification and an explanation as to why, in its opinion, the contract terms were fixed and determinable. Holford generally noted in its submission that Customs had not defined the statutory terms "fixed and determinable." The company expressed a reluctance to certify that the contractual terms were fixed and determinable without first understanding how Customs interpreted these words.

On May 18, 1995, Customs wrote Holford assuring it that a good-faith certification would not give rise to any penalty. Customs, however, did not provide a definition of the statutory terms "fixed and determinable." Holford filed a certification in accordance with Customs' instructions that same day.

On June 7, 1995, Customs issued a letter to Holford stating that the Holford–Yiu Fat contract did not satisfy the requirements of section 334(c) of the URAA because the terms of the contract were not fixed and determinable. Holford requested reconsideration of Customs' decision on July 26, 1995. In a letter dated October 4, 1995, Customs reaffirmed its original determination that the exception provided for in section 334(c) is not applicable to goods imported under the Holford–Yiu Fat contract. Suit in this court subsequently followed.

## STANDARD OF REVIEW

Section 2640(e), Title 28, United States Code, provides that, "[i]n any civil action not specified in this section, the [court] shall review the matter as provided in [5 U.S.C. § 706]." 28 U.S.C. § 2640(e) (1988 & Supp. V 1993) (28 U.S.C. § 1581(h) is not specified therein). Section 706(2)(A), Title 5, United States Code, provides, in relevant part, that "the reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994).

## DISCUSSION

I. Motion to Dismiss for Lack of Jurisdiction

Plaintiff bases jurisdiction for this action under 28 U.S.C. § 1581(h) or, alternatively, on 28 U.S.C. § 1581(i). Section 1581(h), Title 28, United States Code, provides that,

The [court] shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, re-

stricted merchandise, entry requirements, drawbacks, ... or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

28 U.S.C. § 1581(h) (1988).

■ In order for the court to exercise jurisdiction under section 1581(h), four requirements must be fulfilled: 1) judicial review must be sought prior to importation of goods; 2) review must be sought of a ruling or a refusal to change such ruling; 3) the ruling must relate to certain subject matter; and 4) it must be shown that irreparable harm will occur unless judicial review is obtained prior to importation. *National Juice Prods. Ass'n v. United States*, 10 CIT 48, 51, 628 F.Supp. 978, 982 (1986). Plaintiff has the burden of demonstrating that jurisdiction exists by clear and convincing evidence.[1] *See id.*

Applying the foregoing, it is clear that the first three requirements have been met. Specifically, although the contract at issue is dated March 29, 1993, the contract has a seven-year duration and importation is ongoing. Furthermore, only importation after the July 1, 1996 effective date is at issue. Thus, the review sought is prior to importation.

■ Defendant contends that Customs' letters to plaintiff are not "rulings" within the meaning of section 1581(h). The court does not agree. The legislative history of section 1581(h) defines "ruling" as "a determination by the Secretary of the Treasury as to the manner in which it will treat the contemplated transaction." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 46 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3758. This court has interpreted the legislative history "as speaking to specific contemplated import transactions which contain identifiable merchandise and which will feel the impact of the ruling with virtual certainty." *Pagoda Trading Co. v. United States*, 6 CIT 296, 298, 577

F.Supp. 22, 24 (1983). Customs' determination that the "grandfather" clause of section 334(c) will not apply to plaintiff's contract is clear, as is the result of that determination—namely, that Holford's goods purchased pursuant to the contract will be affected by the change in country of origin rules as of July 1, 1996. Accordingly, the court finds that Customs' determination qualifies as the type of "ruling" contemplated by section 1581(h).

Defendant also argues that Customs' determination did not involve the required subject matter of section 1581(h), as the decision addressed only whether section 334(c) of the URAA applied to plaintiff's contract. The court notes, however, that although Customs' determination does not directly decide classification, duties, or marking requirements, the determination does affect how plaintiff's goods will be classified, what duties will be assessed, and how the goods will be marked. Consequently, the ruling relates to the appropriate subject matter and the first three requirements of section 1581(h) are met.

In regards to the fourth requirement, defendant claims that plaintiff has failed to show that it will suffer irreparable harm as the result of Customs' determination. The essence of "irreparable injury" is that "it is harm that 'cannot receive reasonable redress in a court of law.'" *National Juice Prods*, 10 CIT at 53, 628 F.Supp. at 984 (quoting *Manufacture De Machines Du Haut–Rhin v. Von Raab*, 6 CIT 60, 64, 569 F.Supp. 877, 881 (1983)). In making this determination, the court has held that "what is critical is not the magnitude of the injury, but rather its immediacy and the inadequacy of future corrective relief." *Id.* at 53, 628 F.Supp. at 984.

In support of its claim of irreparable harm, plaintiff has offered the affidavit of John Wu, a director of Holford. Pl.'s Mem.P. & A. in Opp'n to Def.'s Mot. Dismiss, App. (Aff. of John Wu) [hereinafter "Wu Aff."]. In his affidavit, Mr. Wu states that, "there is a strong likelihood—indeed a certainty—that Holford will suffer irreparable harm." Wu

1. Section 2639(b), Title 28, United States Code, provides that, "[i]n any civil action described in [28 U.S.C. § 1581(h)], the person commencing the action shall have the burden of making the demonstration required by such section by clear and convincing evidence." 28 U.S.C. § 2639(b) (1988).

Aff. ¶ 3, at 1. If the "grandfather" clause of section 334(c) of the URAA does not apply to the Holford–Yiu Fat contract, Mr. Wu claims that Customs will designate Holford's goods as products of the People's Republic of China (the country of assembly) rather than as products of Australia (the country of cutting) as they are currently. *Id.* ¶ 15, at 6–7.

Mr. Wu contends that this change in the country of origin designation for Holford's goods will be "extremely disruptive to Yiu Fat and Holford." *Id.* ¶ 16, at 7. In China, according to Mr. Wu, allocation of quota is made by selling the quota to individual exporters such as Yiu Fat. *Id.* The price of the quota depends upon a number of variables and "[a]s a rule of thumb, an exporter must pay about 30–50% of the FOB cost of the goods to purchase the quota license." *Id.* This added cost, Mr. Wu claims, will increase Yiu Fat's production price by more than $15 million through January 1, 1998. *Id.* ¶ 26, at 11. Such a cost cannot be passed on to Holford under the contract as the agreement only allows price adjustments resulting from changes in the cost of fabric actually used to produce the garments, or changes in cost due to additional processing, unusual fabrication, or expedited delivery. *See id.;* Admin.R., Ex. A, cl. 5(c), at 4. Moreover, Mr. Wu states that much of the 1996 Chinese quota has already been sold and Yiu Fat has determined that it will not be able to secure enough quota to fulfill Holford's orders.[2] Wu Aff. ¶ 24, at 10. Thus, it appears likely that the contract will either be incapable of performance, Yiu Fat will exercise its contract termination rights, or Holford will be forced to absorb some or all of Yiu Fat's quota costs. In any case, the alternatives are severe business disruption or expenditures for quota that cannot be recovered, even if Holford is correct in that it should not have had to secure quota.

In support of Mr. Wu's affidavit, plaintiff offers several supplemental documents. In particular, plaintiff submits two letters dated December 8, 1995, indicating the current price of Chinese quota for jeans; polo shirts; crew neck t-shirts; and denim & chambray shirts. Suppl.Aff. of John Wu ("Suppl. Aff."),

Ex. 6, at 1, 2. The stated prices for the quotas per piece are as follows: jeans—$1.50; polo shirts—$2.20; crew neck t-shirts—$1.30; and denim & chambray shirts—$2.20. *Id.* The letters were written by Yiu Fat to Holford and by Shanghai Knitting Underwear Group (an independent quota broker according to Mr. Wu) to Yiu Fat. *Id.; see* Suppl.Aff. ¶ 10, at 5. Plaintiff also provides documents showing present orders for clothing which Yiu Fat will manufacture and Holford will deliver in 1995 and early 1996. Suppl.Aff. ¶ 13–14, at 7, & Ex. 7.

Defendant counters that the harm Holford alleges is "entirely speculative" and contains no evidence of actual, imminent injury. Defendant does concede that Chinese quota is sold and does not contest the prices for the quota listed in the letters supplied by plaintiff. Nevertheless, defendant contends that Yiu Fat, not Holford, must purchase the necessary Chinese quota and as Yiu Fat may not pass that cost onto Holford, Holford will not suffer financial harm as a result of Customs' ruling. Additionally, defendant claims that there is no evidence beyond bare allegations that Chinese quota is unavailable or that plaintiff has attempted to obtain such quota for 1996 but could not do so. *See 718 Fifth Ave. Corp. v. United States,* 7 CIT 195, 198, 1984 WL 3661 (1984) ("[D]ocumentation is essential to establishing irreparable harm."); *Tropicana Prods., Inc. v. United States,* 3 CIT 171, 176, 1982 WL 2229 (bare allegations, not supported by facts and figures, are insufficient), *amended in part,* 3 CIT 240, 1982 WL 2234 (1982). Furthermore, defendant maintains that any harm plaintiff will suffer as the result of agreements entered into after June 7, 1995 (the date plaintiff received notice of Customs' initial determination) is the result of plaintiff's own poor business judgment and not the type of harm deemed "irreparable" under section 1581(h).

Likening the present case to *Thyssen Steel Co. v. United States,* 13 CIT 323, 712 F.Supp. 202 (1989), defendant claims that the type of injury alleged by plaintiff, even if it were adequately supported, is not the type of harm recognized as "irreparable." In *Thys-*

**2.** Defendant offered no counter affidavits nor did it request a factual hearing on these issues.

*sen,* the court considered whether the plaintiff was likely to suffer irreparable harm as a result of a Customs ruling reclassifying plaintiff's merchandise under a tariff classification that would subject the goods to voluntary restraint arrangements. *Id.* at 324, 712 F.Supp. at 203. The court determined that plaintiff's claims of lost profits, lost good will, and a tarnished good name were insufficient to show irreparable harm. *Id.* at 327, 712 F.Supp. at 205. The court noted, however, that evidence of substantial harm to business good will, business reputation and a significant loss of new business has been held to constitute irreparable harm, but distinguished the cited cases on the basis that in each of those actions, the plaintiff had adequately documented the allegations of irreparable harm. *Id.* at 327–28, 712 F.Supp. at 206. The court in *Thyssen* appears to have found particularly relevant the fact that the plaintiff was well aware in advance of Customs' intention to alter the subject merchandise's classification and yet, took no steps in anticipation of the proposed change. *Id.* at 327, 712 F.Supp. at 205–06.

A more recent decision, however, indicates that plaintiff's allegations are of the type of injury considered irreparable by the court. In *CPC Int'l, Inc. v. United States,* 896 F.Supp. 1240 (Ct.Int'l Trade 1995), the court found irreparable harm was demonstrated by affidavits submitted from a company director which alleged significant costs, expenditures and losses that would be incurred in complying with the marking ruling at issue. *Id.* at 1243–48. The court stated that,

> [w]here an importer demonstrates that compliance with a ruling of Customs regarding country of origin marking would cause the importer to incur costs, expenditures, business disruption or other financial losses, for which the importer has no legal redress to recover in court, even if the importer ultimately prevails on the merits in contesting the ruling, the importer suffers irreparable harm within the purview of § 1581(h).

*Id.* at 1243.

█ In the instant case, plaintiff has similarly offered the affidavit of a company director in support of its claim of irreparable harm. In his original and supplemental affidavits, Mr. Wu states that if Customs' determination is upheld Holford will suffer irreparable harm in that, Yiu Fat and/or Holford will incur additional production costs of potentially more than $15 million through January 1, 1998 in purchasing Chinese quota, which effectively will alter their business relationship; Yiu Fat and/or Holford may be unable to obtain Chinese quota necessary to fulfill Holford's orders; Holford will be unable to accept future orders; Holford will lose customers and profit; and Holford may be exposed to claims from its customers for failure to timely deliver.

The court notes that affidavit evidence attesting to increased business costs, loss of profits, and loss of business reputation has been found by this court to adequately document irreparable harm. *See CPC Int'l,* 896 F.Supp. at 1248; *National Juice Prods.,* 10 CIT at 53–57, 628 F.Supp. at 984–87. Given (1) Mr. Wu's original and supplemental affidavits, (2) the supplemental letters indicating Chinese quota prices Yiu Fat and/or Holford necessarily will pay to enter its goods into the United States under the new country of origin laws, (3) the terms of the contract, including the rights of the parties to terminate the contract on notice of particular duration, and (4) the fact of limited and costly Chinese quota, the court finds that plaintiff has provided adequate documentation to show that Holford will suffer irreparable harm if it does not receive pre-importation review of Customs' rulings.

The court also notes that defendant's contention that plaintiff would suffer harm only as a result of it's own poor business judgment is misguided. A plaintiff is not required to change its business dramatically to avoid financial harm before seeking pre-importation review. The purpose of pre-importation review is to avoid severe business disruption that would be unnecessary if plaintiff is correct. If plaintiff is incorrect, any disruption is simply that which is a natural consequence of a change in the law. Indeed, if a party were required to alter its business arrangements dramatically prior to review, the party most likely would be unable to prove the actual harm required for post-

importation review under 28 U.S.C. § 1581(a) (1988), or would otherwise render the dispute moot. Accordingly, as plaintiff has demonstrated all required elements of 28 U.S.C. § 1581(h), the court asserts jurisdiction over this matter pursuant to section 1581(h).

## II. Plaintiff's Motion for Judgment Upon the Agency Record

 At issue is Customs' statutory interpretation of the terms "fixed" and "determinable" contained in section 334(c)(2) of the URAA. It is well settled that, when a court reviews an agency's construction of the statute which it administers, the primary question is "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* at 843 n. 9, 104 S.Ct. at 2782 n. 9. Here, the court finds Customs' construction of the terms "fixed" and "determinable" as applied to these facts to be contrary to clear congressional intent.

Customs informed plaintiff in a letter that the Holford–Yiu Fat contract did not qualify for exemption from the effective date of the new origin rules. Customs stated:

> The contract you submitted fails to satisfy [19 U.S.C. § 3592(c)(2) ]. Although page 3 of the contract sets forth prices for each category of wearing apparel covered by the agreement, clause 5(c) states that prices may be adjusted upwards or downwards to reflect variances in actual fabric utilization. We agree that an adjustment to a fixed base price does not necessarily prevent the price from being fixed and determinable. However, this is only true if the method for determining the amount of the adjustment is fixed. Clause 5(c) states that 'prices may be adjusted upwards or downwards to reflect the change in fabric costs.' However, it does not state

that adjustments will be on a pro rata basis or by some other formula.

Admin.R., Ex.H at 1.

In its request for reconsideration of Customs' ruling, Holford explained that to the extent that garments are produced in accordance with accepted industry standards, the prices are fixed. Furthermore, Holford detailed what "accepted industry standards" are in the wearing apparel industry with regards to size distributions within an order and how the industry treats deviations from such standards. In support of its explanation, Holford submitted letters from independent companies that do not purchase apparel from Holford. Admin.R., Exs. J, K, L.

Customs, however, was unpersuaded and affirmed its original ruling. Admin.R., Ex.N. This determination was made after Customs reviewed the contract, the certification, Holford's request for reconsideration, and the results of a meeting between Holford and several Customs representatives. Customs failed, however, to cite any authority for its' interpretation of "fixed and determinable" in either its original ruling or the reconsideration.

 Statutes are to be construed to carry out the intent of the legislature. *See Nippon Kogaku (USA), Inc. v. United States,* 673 F.2d 380, 382 (C.C.P.A.1982). The primary source for determining legislative intent is the statutory language itself, "which is presumed to be used in its normal sense, in the absence of proof of a special meaning in the trade." *United States v. Esso Standard Oil Co.,* 42 C.C.P.A. 144, 151, 1955 WL 6827 (1955). In determining the common meaning of a term, courts may and do consult dictionaries, scientific authorities, and other reliable sources of information including testimony of record. *Nippon Kogaku,* 673 F.2d at 382.

Defendant offers common dictionary definitions of the terms "fixed" and "determinable" as follows: Fixed; not subject to change or fluctuation. Determinable; capable of being determined, definitely ascertained, or decided upon. Def.'s Mot. to Dismiss at 30 (citing *Webster's Ninth New Collegiate Dictionary* 468, 346 (9th ed.1991)). De-

fendant contends that the price and quantity terms of plaintiff's contract are neither "fixed" nor "determinable" under section 334(c)(2) of the URAA given the common meaning of the statutory terms. Both parties, however, appear to accept that objectively determinable price and quantity terms are "fixed and determinable." Defendant's argument is that the method of establishing the material terms of the contract are not objective.

In regards to price, defendant points out that although clause 5(a) of the Holford–Yiu Fat contract contains specific base prices for various types of garments, the contract also provides that (1) there will be a 10% price reduction if Holford buys more than 1 million pieces of any of the garments in a calendar year, (2) the base prices may increase or decrease in proportion to the amount of fabric actually used, and (3) the parties may also adjust prices to reflect additional dying or printing costs or for unusual styles fabrication, assortments or expedited delivery schedules. Admin.R., Ex.A, cl. 5, at 3–4. Defendant asserts that there are many ways in which the "price" per garment may change during the contract period, and that each change in price is based on the same subjective variable, namely, the amount and assortment of goods Holford decides to purchase in any given order and, thus, cannot be "determinable."

In regards to quantity, defendant likens plaintiff's contract to one in *Toho Titanium Co. v. United States,* 14 CIT 500, 500, 743 F.Supp. 888, 889 (1990), in which minimum amounts of titanium sponge to be purchased annually were set in the contract. The court in *Toho* found that because the buyer could elect to purchase more than the contractual minimum, "Commerce could, within its discretion, find that the quantity term was indefinite and set the date of sale when the customer issued its delivery instructions to Toho." 14 CIT at 503, 743 F.Supp. at 891.[3] Defendant points out that while the Holford contract contains minimum quantities Holford is required to purchase from Yiu Fat

each month, no maximum quantity is set other than Yiu Fat's capacity limitations, as set forth in the contract (250,000 jeans per month; 500,000 units per month of all other apparel combined). *See* Admin.R., Ex.A, cl. 6, at 4–5.

In turn, plaintiff cites definitions from *Black's Law Dictionary.* Plaintiff states that "fixed" and "determinable" are defined therein as follows: "Fixed: Prices are 'fixed' when they are mutually agreed upon. *United States v. Masonite Corp.,* 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942). Determinable: Liable to come to an end upon the happening of a certain contingency. Susceptible of being determined, found out, definitely decide [sic] upon, or settled." Pl.'s Mem.P. & A. in Supp.Mot.Summ. J. at 21 (citing *Black's Law Dictionary* 637, 450 (6th ed. 1991)). Plaintiff concedes that the definitions are substantially similar, but points out that the terms are used in regard to contract terms and must be construed in that context and in the light of applicable contract law.

Plaintiff states that under New York state contract law and the Uniform Commercial Code, price and quantity terms are "fixed" and "determinable" if the contract is "binding" on the parties. The court, however, does not agree that resort must be made to any particular state law to determine the proper statutory meaning of "fixed" and "determinable." Given the common and legal definitions cited by both parties, the court finds that the price and quantity terms of the Holford–Yiu Fat contract are "fixed" and "determinable" when viewed in the light of trade usage and the legislative history of section 334(c) of the URAA.

As noted above, plaintiff submitted letters from independent companies in the garment industry to demonstrate what are "accepted industry standards" as to price and quantity terms of long-term apparel contracts. Plaintiff maintains, and the letters support, that in the garment industry, long-term sales contracts are entered into with the goal of attaining a fair amount of flexibility and certainty for both buyer and seller.

---

**3.** The court notes that *Toho* is inapposite. *Toho* was an antidumping case in which maximum quantities were relevant to determining the cor-

rect date of sale. *See* 14 CIT at 503, 743 F.Supp. at 891.

Plaintiff explains that within the garment industry, a specific ratio of sizes is assumed when a dozen garments are ordered. If an inventory order specifies sizes which deviate from the industry standard ratio, the seller will adjust price on the basis of fabric costs. Thus, factors such as, fabric utilization, size assortment and delivery schedules may affect price, as industry standards require the buyer to pay additional costs incurred by the seller in manufacturing the specific goods ordered. Consequently, plaintiff claims that clause 5(c) of its contract operates as a sliding scale, e.g. price adjustment based on the amount of fabric actually used to produce a given inventory order.

The court also notes that the legislative history of section 334(c) of the URAA states:

> The 'grandfather' exception under [19 U.S.C. § 3592(c)] and the 18 month delay on implementation of the new regulations are intended to ensure that the new rules do not upset legitimate commercial expectations under preexisting contracts and have as little disruptive impact on the trade as possible.

H.R.Rep. No. 826(I), 103d Cong., 2d Sess. 146 (1994), *reprinted in* U.S.C.C.A.N. 1994, pp. 3773, 3918. The legislative history cited above indicates that Customs should apply the statutory requirements of section 334(c) broadly so that merchants with "legitimate commercial expectations under preexisting contracts" will be able to take advantage of the statute's modestly delayed effective date. The 18–month delay appears intended to afford the parties a reasonable amount of time to reorder their businesses, as the adjustments required will be dramatic in some cases.

There is no doubt that Holford and Yiu Fat have legitimate commercial expectations under their pre-existing contract. Defendant correctly states that under the contract, either party may terminate the contract by notifying the other that it wishes to do so within 180 days, however, this fact does not diminish the legitimate commercial expectations of the parties to the contract. The court also notes that the 180 day provision was not a basis for Customs' ruling.[4] More-

over, Holford claims that if it and/or Yiu Fat cannot obtain the necessary Chinese quota to import its goods as contemplated by the contract or the contract is cancelled, Holford may be subject to claims from customers for untimely delivery as a result of Customs' ruling. Thus, legitimate commercial expectations are contained within, and surround, the pre-existing Holford–Yiu Fat contract.

Although the price and quantity of garments Holford orders from Yiu Fat each month may vary, such changes do not prevent the price and quantity terms of the contract from being "fixed" and "determinable." The court notes that the price per garment may vary with each order, but only by objective standards, namely the additional cost of the actual fabric required for the particular garments ordered, or costs related to additional processing, unusual fabrication, or expedited delivery. As such, price terms of the Holford–Yiu Fat contract are "fixed" and "determinable." Similarly, the contract sets a minimum quantity of garments Holford must purchase from Yiu Fat each month. While it is true that Holford may purchase additional garments, a maximum limit is set by Yiu Fat's capacity limitations, which are set forth in the contract and which are not greatly different from the minimum required. Thus, the quantity terms of Holford's contract are also "fixed and determinable."

Given the common definitions of the terms "fixed" and "determinable," accepted garment industry standards, and the legislative history of section 334(c), the court finds that Customs erred in denying application of the "grandfather" clause of section 334(c) to plaintiff's contract with Yiu Fat. Applying Customs' interpretation of the statute would no doubt disqualify most, if not all, long-term, pre-existing apparel sales contracts from application of the "grandfather" clause of section 334(c). The court finds this result to be contrary to legislative intent and Customs' construction of the particular contract at issue to be unreasonable and contrary to law. Accordingly, plaintiff's motion for judgment upon the agency record is granted.

---

4. Defendant also noted at oral argument that this provision would be an improper basis for finding

price or quantity terms not fixed and determinable.

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

It is declared that the contract at issue meets the requirements of the exception to the effective date set forth in 19 U.S.C. § 3592(c) (1994).